

**Bedford** Municipal Court

Information   Court Officials   Departments   Case Information   Home

## Civil Case Summary

### General Information

| | |
|---|---|
| **Case Number :** | 09CVF03317 |
| **Case Name :** | NCO PORTFOLIO MANAGEMENT v. CHRISTOPHER G HRIVNAK |
| **Date Filed :** | 6/4/2009 |
| **Case Status :** | Open |

**Case Information**
Today's TR/CR Docket
TR/CR Case Search
Today's Civil Docket
Civil Case Search

Print This Page
Contact Us

Case Search
Site Search

Traffic/Criminal
Clerk of Courts
Small Claims
Prosecution
Magistrates
Probation
Parking
Bailiff
Civil

### Parties

| Party Name | Party Address | Attorney Name | Label |
|---|---|---|---|
| NCO PORTFOLIO MANAGEMENT | 507 PRUDENTIAL RD HORSHAM, PA 19044 | BRIAN BLOCK | Plaintiff |
| CHRISTOPHER HRIVNAK | 6645 SOLON BV SOLON, OH 44139 | ROBERT BELOVICH | Defendant / Third-Party Plaintiff |
| NCO PORTFOLIO MANAGEMENT, INC. | C.O C.T. CORP SYSTEMS, STAT AGENT CLEVELAND, OH 44114 | | Third-Party Defendant |
| NCO FINANCIAL SYSTEMS, INC. | C/O C.T. CORP SYSTEM, STAT AGENT CLEVELAND, OH 44114 | | Third-Party Defendant |
| NCO GROUP, INC. | 507 PRUDENTIAL ROAD HORSHAM PA 19044 | | Third-Party Defendant |
| JAVITCH, BLOCK & RATHBONE L.L.P. | 1100 SUPERIOR AVENUE, 19TH FLOOR CLEVELAND, OH 44114-2518 | | Third-Party Defendant |

### Services

| Requested For | Requested On | Requested By | Party Served | Method | Status | Completed On |
|---|---|---|---|---|---|---|
| Transfer to Another Court | 8/10/2009 | CHRISTOPHER HRIVNAK | CUYAHOGA COUNTY COMMON PLEAS COURT | Certified Mail | Perfected | 8/11/2009 |
| New Party Summons | 7/9/2009 | CHRISTOPHER HRIVNAK | NCO PORTFOLIO MANAGEMENT, INC. | Certified Mail | Perfected | 7/14/2009 |
| New Party Summons | 7/9/2009 | CHRISTOPHER HRIVNAK | JAVITCH, BLOCK & RATHBONE L.L.P. | Certified Mail | Perfected | 7/13/2009 |
| New Party Summons | 7/9/2009 | CHRISTOPHER HRIVNAK | NCO GROUP, INC. | Certified Mail | Perfected | 7/13/2009 |
| New Party Summons | 7/9/2009 | CHRISTOPHER HRIVNAK | NCO FINANCIAL SYSTEMS, INC. | Certified Mail | Perfected | 7/13/2009 |
| Civil Summons | 6/4/2009 | | CHRISTOPHER HRIVNAK | Certified Mail | Perfected | 6/8/2009 |

## Claims/Judgments

| Claim Number | Claim Description | Date Filed | Claim Type | Prayer Amount |
|---|---|---|---|---|
| 1 | NCO PORTFOLIO MANAGEMENT v. CHRISTOPHER G HRIVNAK | 6/4/2009 | Civil Claim | $11,481.84 |

| | Judgment Number | Judgment | Judgment Date | Judgment Amount |
|---|---|---|---|---|
| | 1 | | 8/10/2009 | |

| Claim Number | Claim Description | Date Filed | Claim Type | Prayer Amount |
|---|---|---|---|---|
| 2 | CHRISTOPHER G HRIVNAK v. NCO PORTFOLIO MANAGEMENT, INC., et al. | 7/9/2009 | Claim against a third-party by plaintiff(s) or def | $25,000.00 |

| | Judgment Number | Judgment | Judgment Date | Judgment Amount |
|---|---|---|---|---|
| | 1 | | 8/10/2009 | |

## Docket Information

NOTE: The Docket Information below is an abbreviated version of the actual Docket Entry. Only the first 60 characters of each line will show.

Click Here to display Full Docket Entry or contact the court for the full text entry.

| Entry Date | Entry |
|---|---|
| 8/13/2009 | Service For Transfer to Another Court to CUYAHOGA COUNTY COM |
| 8/10/2009 | Transfer to Another Court notice served to CUYAHOGA COUNTY C |
| 8/10/2009 | CUYAHOGA COUNTY COMMON PLEAS COURT Added as Other Party |
| 8/10/2009 | Judgment Transferred for CHRISTOPHER G HRIVNAK rendered. Ju |
| 8/10/2009 | Judgment Transferred for CHRISTOPHER G HRIVNAK rendered. Ju |
| 8/3/2009 | Paid $45.00 for Cost/TRANSFER TO ANY COURT receipt# 2009312 |
| 8/3/2009 | Written motion TRANSFER TO ANY COURT filed by CHRISTOPHER G |
| 8/3/2009 | Defendant's $100.00 check payable to Cuy Co Court of Common |
| 7/30/2009 | Civil Journal Transfer CPC created in Book 294 Page 102 |
| 7/29/2009 | No Jury monies received. Case returned to regular Civil Tri |
| 7/24/2009 | Written motion QUASH filed by JAVITCH, BLOCK & RATHBONE L.L. |
| 7/24/2009 | Written motion EXTENSION OF TIME filed by NCO FINANCIAL SYST |
| 7/23/2009 | Defendant's co-counsel's correspondence: Counterclaim excee |
| 7/22/2009 | Perfected Notice sent to NCO PORTFOLIO MANAGEMENT |
| 7/16/2009 | Service For New Party Summons to NCO GROUP, INC. sent via Ce |
| 7/15/2009 | Perfected Notice sent to NCO PORTFOLIO MANAGEMENT |
| 7/15/2009 | Perfected Notice sent to NCO PORTFOLIO MANAGEMENT |
| 7/15/2009 | Perfected Notice sent to NCO PORTFOLIO MANAGEMENT |
| 7/15/2009 | Service For New Party Summons to NCO PORTFOLIO MANAGEMENT, I |
| 7/15/2009 | Service For New Party Summons to NCO FINANCIAL SYSTEMS, INC. |
| 7/15/2009 | Service For New Party Summons to JAVITCH, BLOCK & RATHBONE L |
| 7/10/2009 | Jury Demand Fee Notice sent to CHRISTOPHER G HRIVNAK |
| 7/9/2009 | New Party Summons notice served to NCO PORTFOLIO MANAGEMENT, |
| 7/9/2009 | Paid $80.00 for Cost to serve /COUNTERCLAIM receipt# 200931 |
| 7/9/2009 | New Party Summons notice served to JAVITCH, BLOCK & RATHBONE |
| 7/9/2009 | New Party Summons notice served to NCO GROUP, INC. via Certi |
| 7/9/2009 | New Party Summons notice served to NCO FINANCIAL SYSTEMS, IN |
| 7/9/2009 | Third-party Claim for $25000.00 Filed, CHRISTOPHER G HRIVNAK |
| 7/9/2009 | JAVITCH, BLOCK & RATHBONE L.L.P. Added as Defendant |

| 7/9/2009 | NCO GROUP, INC. Added as Defendant |
| 7/9/2009 | NCO FINANCIAL SYSTEMS, INC. Added as Defendant |
| 7/9/2009 | NCO PORTFOLIO MANAGEMENT, INC. Added as Defendant |
| 7/9/2009 | CHRISTOPHER G HRIVNAK Added as Plaintiff |
| 7/9/2009 | CHRISTOPHER G HRIVNAK Added as Plaintiff |
| 7/9/2009 | WrittenANSWER WITH COUNTER CLAIM WITH JOINDER OF ADDITIONAL |
| 6/9/2009 | Perfected Notice sent to NCO PORTFOLIO MANAGEMENT |
| 6/9/2009 | Service For Civil Summons to CHRISTOPHER G HRIVNAK sent via |
| 6/4/2009 | Paid $7.00 for Cost/MUNI CT SPL PGM FUND receipt# 200309914 |
| 6/4/2009 | Paid $83.00 for Cost/CIVIL FILING FEE receipt# 2009309144 b |
| 6/4/2009 | Paid $4.00 for Cost/CAPITAL IMPROVEMENT receipt# 2009309144 |
| 6/4/2009 | Paid $25.74 for Cost/LEGAL AID FUND receipt# 2009309144 by |
| 6/4/2009 | Paid $0.26 for Cost/LEGAL AID ADMIN FEE receipt# 2009309144 |
| 6/4/2009 | Civil Summons notice served to CHRISTOPHER G HRIVNAK via Cer |
| 6/4/2009 | Civil Claim for $11481.84 Filed, NCO PORTFOLIO MANAGEMENT |
| 1/1/1900 | |

SERVING: BEDFORD | BEDFORD HEIGHTS | BENTLEYVILLE | CHAGRIN FALLS | CHAGRIN FALLS TWP. | GLENWILLOW
HIGHLAND HILLS | MORELAND HILLS | N. RANDALL | OAKWOOD | ORANGE | SOLON | WARRENSVILLE HEIGHTS | WOODMERE

Limitation on Liability.

Copyright © 2002 Bedford Municipal Court. All rights reserved.

This Web Site has been optimized for 1024x768 resolution.



RCD H25574 KES

03 JUN -6 AM 10 13

IN THE BEDFORD MUNICIPAL COURT
CUYAHOGA COUNTY, OHIO

NCO Portfolio Management          )
 Assignee Of Citibank, NA         )
507 Prudential Rd                 )    CASE NUMBER: 09CVF03317
Horsham, PA 19044-                )
                                  )    JUDGE:
        Plaintiff                 )
vs.                               )
                                  )    COMPLAINT FOR MONEY
Christopher G. Hrivnak            )
AKA Chris Hrivnak                 )
AKA                               )
6645 Solon Bv                     )
Solon, OH 44139-                  )
                                  )
           -                      )
                                  )
        Defendant(s)              )

     1. Plaintiff acquired, for a valuable consideration, all right, title
and interest in and to the claim set forth below originally owed by
Defendant(s) to CITIBANK
As a result of the assignment, Plaintiff became, and now is, the owner of
account number xxxx-xxxx-xxxx-9948.

     2. Prior to December 2, 1994, Defendant(s) entered into a written
contract with assignor, a copy of which is attached as Exhibit "A" and
incorporated by reference.

     3. Under the terms of this contract, Plaintiff agreed to extend to
Defendant(s) the use of assignor's credit and issued to Defendant(s) a
credit card, xxxx-xxxx-xxxx-9948, for Defendant(s)' use. Defendant(s),
by accepting and using the credit card thus issued, agreed to perform
the terms and conditions of the specified contract.
     4. Among the terms and conditions of the contract, Defendant(s) agreed to
pay promptly, on rendition of a statement, all charges made with Defendant(s)'
credit card.

     5. The account records are not attached hereto because, upon information
and belief: (a) Plaintiff is not the original creditor and does not have
possession, custody or control of said records; (b) copies were sent monthly
to the Defendant(s), and are or were in Defendant(s)' possession, custody or
control; and/or (c) said account records may be voluminous.



6. There is presently due the Plaintiff from the Defendant(s) on the contract, the sum of $11,481.84.

7. Plaintiff notified defendant of the assignment and demanded that Defendant(s) pay the balance due on the account, but no part of the foregoing balance has been paid.

8. Defendant(s) is in default on this repayment obligation.

9. Although due demand has been made, the Defendant(s) has failed to liquidate the balance due and owing.

WHEREFORE, the Plaintiff prays for a Judgment against the Defendant(s) in the amount of $11,481.84, with statutory interest from the date of judgment, costs of this action, and such other and further relief as the Court deems just and proper under the circumstances.

------------------------------------
Brian C Block, SCR # 0076526
Eric Peterson, SCR #0075114
Attorneys for Plaintiff
Javitch, Block & Rathbone LLP
1100 Superior Ave, 19Th Floor
Cleveland OH 44114-2518
(216) 687-1199
CLE@JBANDR.COM
FAX 216-623-0190

25125 c 01.07.09
RCD H25574 KES

 Citibank card  H 25574



# CITIBANK CARD AGREEMENT

This Agreement and the folder containing the card are your Citibank Card Agreement. The folder contains important account information, including the annual percentage rate and the amount of any membership fee. Please read and keep the folder and this Agreement for your records.

To simplify the rest of this Agreement for you, the following definitions will apply. The words *you, your*, and *yours* mean the person responsible for this Agreement, to whom we direct the billing statement. The word *card* means one or more cards which we have issued with your account number. The words *we, us*, and *our* mean Citibank (South Dakota), N.A. The words *Citibank checks* mean one or more checks that we may provide to access your Citibank card account. This Agreement is binding on you unless you cancel your account within 30 days after receiving the card and you have not used or authorized use of your account.

## Using Your Account and Your Credit Line:

The card must be signed to be used. Your initial credit line appears on the folder containing the card. A portion of your credit line, called the cash advance limit, is available for cash advances. At our discretion and at any time, we may change your credit line or cash advance limit. We will notify you if we do, either by mail or through a billing statement sent either before or after the change takes effect. You may request a change to your credit line or cash advance limit by contacting Customer Service by telephone or mail.

The full amount of your credit line is available to buy or lease goods or services wherever the card is honored. Your cash advance limit is available for cash through any bank or automated teller machine that accepts the card or by using Citibank checks. The total amount charged on your account, including purchases, balance transfers, cash advances, finance charges, fees, or other charges, must always remain below your credit line. However, if that total amount exceeds your credit line you must still pay us.

## Additional Cards:

You may request additional cards on your account for yourself or others and you may permit another person to have access to the card or account number. However, if you do, you must pay us for all charges made by those persons, including charges for which you may not have intended to be responsible. You must notify us to revoke permission for any person you previously authorized to use your account. If you tell us to revoke another person's use of your account, we may close the account and issue a new card or cards with a different account number. You are responsible for the use of each card issued on your account according to the terms of this Agreement.

## Membership Fee:

The folder containing the card indicates whether your account is subject to a membership fee. If it is, the fee is added to the purchase balance and is non-refundable unless you notify us to cancel your account within 30 days from the mailing date of the billing statement on which the fee is billed.

 EXHIBIT A



**Billing:**

Your billing statement shows the balance, any finance charges, fees, the minimum payment, and the payment due date. It also shows your current credit line and cash advance limit, an itemized list of current charges (Citibank dividend card, credit, and purchase amounts), service charges, purchase and cash advance balances, and finance charges on each balance, and other important information. If you default under this Agreement, we may, to our sole discretion, stop sending you billing statements. If we delay or discontinue uncollection or if we institute the delinquency collection proceedings by sending it to an outside collection agency or attorney for collection.

You must notify us of a change in your address by contacting Customer Service by telephone or mail. We will mail or deliver our billing statement to only one mailing address.

**How We Determine the Balance:**

The total outstanding balance (the amount you owe us) appears as the "New Balance" on the billing statement. To determine the New Balance we begin with the outstanding balance on your account at the beginning of each billing period (we call this the "Previous Balance" on the billing statement). We add any purchases and cash advances and subtract any payments and credits that we receive. We then add the appropriate finance charges and fees and make other applicable adjustments.

**Annual Percentage Rate for Purchases:**

Your annual percentage rate for purchases and the corresponding daily periodic rate may vary. Your variable annual percentage rate for purchases is the applicable annual percentage rate divided by 365. Whether or not the annual percentage rate for purchases is based on the quarterly U.S. Prime Rate plus a margin is indicated on the folder combining this card.

**Annual Percentage Rate for Cash Advances:**

Your ANNUAL PERCENTAGE RATE for cash advances and the corresponding daily periodic rate for cash advances is 0.0548%. The cash advance annual percentage rate divided by 365. Please see the next section for details relating to how this rate may change if you default under this Agreement.

**Variable Annual Percentage Rates for Purchases and Cash Advances:**

If the annual percentage rate for purchases is based on the quarterly U.S. Prime Rate plus a margin, we will calculate the rate by adding the margin that appears on the folder combining this card to the U.S. Prime Rate. The U.S. Prime Rate for each quarter of any periodic rate. We use the U.S. Prime Rate published in The Wall Street Journal on the last business day of September, and December of each year. If the third Tuesday is a holiday, we will use the Prime Rate published the next day. If more than one Prime Rate is published, we choose the highest rate. If The Wall Street Journal ceases publication or to publish the Prime Rate, we may use the Prime Rate published in any other newspaper of general circulation or we may substitute a comparable index rate at our sole discretion. Each new annual percentage rate changes, we will apply it to any existing balances, subject to any promotional rate that may apply.

In addition, the annual percentage rate for purchases and cash advances may vary if you default under any Citibank Card Agreement because you fail to make a payment to us or any other creditor when due, you exceed your credit line, or you make a payment to us that is not honored by your bank. In such circumstances, we may increase the ANNUAL PERCENTAGE RATE

---

(including any promotional rate) on all balances to a higher rate of up to 23.99%. Factors considered in determining this higher rate may include the length of time the account has been open, the existence, seriousness, and timing of defaults under any Citibank Card Agreement or loan, and other indications of account usage and performance. Your account will continue to be charged at the higher annual percentage rate on new purchases, new cash advances, or both after you have met the terms of all Citibank Card Agreements for six months. Your individual balances and rates will vary. Promotional statements will remain subject to the higher rate until they are paid in full.

Any increase or decrease in a variable annual percentage rate takes effect on the first day of the billing period following the month in which we calculate the new annual percentage rate. An increase in the variable annual percentage rate means that you will pay a higher finance charge and perhaps a higher minimum payment.

**Promotional Rate Offers:**

At our discretion, we may offer you a promotional annual percentage rate for all or a part of the purchases and/or cash advances made during the time for which the promotional rate applies may be limited. Any promotional rate, the corresponding periodic rates, and the period of time during which it is in effect will appear on the folder combining this card. We may also offer you a promotional annual percentage rate to encourage specific transactions, such as transferring balances from accounts you have with other credit card issuers. Any promotional rate offer will be subject to the terms of the offer and this Agreement.

**Finance Charges:**

Finance charges will begin to accrue from the date of the advance for cash advances and from the date of the transaction for purchases (including balances you transfer from any other credit card issuer) and continue to accrue until payment in full is credited to your account. However, if you paid the total New Balance listed on the last billing statement, finance charges do not accrue on any purchases that you did not transfer a balance from any other credit card issuer during that billing period, you will have until the payment due date shown on that statement to pay the New Balance and avoid imposition of finance charges and purchases. In certain cases, this same grace period for purchases may apply even if you have transferred a balance during any prior period. If you did not pay the New Balance in full by such grace period for purchases, the balance transfer offer will so indicate.

We will calculate finance charges as follows:

We figure a portion of the finance charge on your account by multiplying the daily balance for purchases (which include balances you transfer from any other credit card issuer) and the daily balance on cash advances by the applicable daily periodic rate and adding together any such finance charges for purchases and for cash advances for each day in the billing period.

To get the daily balance, we take the beginning balance each day, add any new purchases, cash advances, or fees, and subtract any payments or credits. This gives us the daily balance. Then, for each day after this statement/closing date of the previous billing period and varies during the number of days in this billing period, includes the Statement/Closing Date of the current billing period.

To obtain the daily balance, we take the beginning balance for purchases and the beginning balance for cash advances each day, and any finance charge on the previous day's balance, transaction, and fees and any finance charge on any new purchases, subtract any payments or credits, and make other adjustments. Unless you elect to use a later date, we add a new purchase or purchase balance, as

---

EXHIBIT A

of the date of the purchase and a new cash advance to the cash advance balance as of the date of the advance. A credit balance is treated as a balance of zero.

☒ The balances subject to finance charge for purchases and for cash advances on the billing statement are each the average of the respective advances or days in the billing period. If you multiply these figures by the number of days in the billing period and by the applicable daily periodic rates, the results will be the two finance charges assessed on purchases or cash advances, except for minor variations caused by rounding.

☒ If the balance on purchases or cash advances is subject to more than one rate (for example, because of purchases or cash advances made during a promotional rate offer), we will separately calculate the balance subject to finance charge and the resulting finance charge in the same manner as described above.

## Cash Advances and Transaction Fee:
You have obtained a cash advance if you obtain funds from an automated teller machine (ATM), through a Citibank check, through home banking, or through a financial institution; make a wire transfer; acquire a money order, traveler's check, lottery ticket, betting or gaming chip, or similar item; or engage in a similar transaction. For each cash advance, we add an additional FINANCE CHARGE of 3.0% of the advance, but not less than $5, and not more than $50. This fee will be added to the cash advance balance in the billing statement on which the cash advance appears. This cash advance transaction fee may cause the annual percentage rate on the billing statement on which the cash advance appears to exceed the nominal annual percentage rate.

## Minimum Finance Charge:
If finance charges based on periodic rates are being added to your account, but the total of such finance charges on purchases and cash advances is less than $.50, we assess a minimum FINANCE CHARGE, based on periodic rates, of $.50. We add this minimum finance charge to the purchase or cash advance balance at our discretion.

## Credit Balances:
You may not maintain a credit balance on your account in excess of your credit line. We will return to you any credit amount over $100 if the amount remains for more than one billing cycle. You may request a refund of a credit balance at any time. We may reduce the amount of any credit balance by the amount of new charges billed to your account.

## Security Interest for Secured Accounts:
This is for combining the card... If your account is a secured account, you have given us a security interest in a certificate of deposit or a savings account to secure repayment of your account. If you withdraw your funds from the certificate of deposit or savings account, we will close your card account.

## Transactions Made in Foreign Currencies:
If a transaction is made in a foreign currency, we and Visa International or MasterCard International, depending on which card is used, will convert the transaction into a U.S. dollar amount. Visa and MasterCard will act in accordance with their operating regulations or conversion procedures in effect at the time the transaction is processed. Currently, their regulations and procedures provide that the currency conversion rate they use is either

(1) a wholesale market rate or (2) a government-mandated rate in effect one day prior to the processing date. Visa increases this conversion rate by an international reimbursement rate and MasterCard increases this conversion rate by an amount. Visa and MasterCard use this conversion rate provided to us by Visa or MasterCard by two percent and keep this increase. The currency conversion rate calculated in this manner and applied to the transaction date may differ from the rate in effect on the transaction date or the posting date.

## Minimum Amount Due:
Each month, you must pay a minimum amount that is the total of two figures. The first is any previous amount that is past due plus any amount in excess of your credit line. The second is the greater of the amount of your billed finance charges or $20, or the following:

☒ The New Balance on the billing statement if it is less than $20, or
☒ $20, if the New Balance is at least $20 and not greater than $960, or
☒ 1/48 of the New Balance if the New Balance exceeds $960, 1/48 of the New Balance (rounded down to the nearest dollar).

You must pay at least the minimum amount by the payment due date, but you may pay more at any time without a penalty. We will allocate payments to amounts owed on your account at our discretion. This includes, but is not limited to, applying payments to promotional balances, such as balances you transfer, from lower-credit card issuers, before we apply such payments to your purchase or cash advance balances. If you pay more than the minimum, we will apply the excess amount to the purchase or cash advance balance, at our discretion. The sooner you pay the New Balance, the less you will pay in finance charges. We may also allow you to skip a payment. If we do, we will tell you. If you choose to skip a payment when offered, we will continue to assess finance charges.

## Payments:
Do not send cash payments. We can accept late or partial payments, as well as payments that reflect "paid in full" or other restrictive endorsements, without losing any of our rights under this Agreement. There may be a delay of up to five days in crediting a payment if it is received at an address other than the address provided on the billing statement. You agree to pay us in U.S. dollars drawn on funds on deposit in the United States using a payment check, similar instrument, or automatic debit that will be processed and honored by your bank. We reserve the right to accept payments made in foreign currency and an automatic debit at our discretion, in which case we will select the currency conversion rate at our discretion.

## Over-the-Credit-Line Fee:
We will add a $29 fee to the purchase balance for each billing period that the New Balance exceeds your credit line.

## Late Fee:
We will add a $29 fee to the purchase balance for each billing period you fail to make the minimum payment by its due date.

## Returned Payment Fee:
We will add a $29 fee to the purchase balance when a payment check or similar instrument is not honored, when your related check cannot be processed, or when an automatic debit is returned unpaid. At our discretion, we will still assess this fee the first time your check or payment is not honored, even if it is imposed upon resubmission.

5

4

EXHIBIT 2



## Citibank Checks:

Citibank checks may be used to purchase goods and services or to obtain cash up to the amount of your available cash advance limit unless that amount will cause the balance to exceed your credit line. We will treat Citibank checks as a cash advance and charge them against your cash advance limit. Each Citibank check must be in the form we have issued and must be used according to any instructions we give you. Citibank checks may be used only by the person whose name is printed on them. Citibank checks may not be used to pay any amount owed to us under this or any other Citibank Card Agreement. We will not certify any Citibank checks, nor will we return paid Citibank checks.

## Returned Citibank Check Fee:

We will add a $29 fee to the cash advance balance if we decline to honor a Citibank check. We may decline to honor a Citibank check if, for example, the amount of the check would cause the balance to exceed your credit line, if you default, if you did not comply with our instructions regarding the check, if your account has been closed, or if the card has expired.

## Stop Payment Fee:

We will add a $29 fee to the cash advance balance when payment of a Citibank check is stopped at your request. You may stop payment on a Citibank check by notifying us in writing at P.O. Box 6500, Sioux Falls, South Dakota 57117 or by calling us at the telephone number listed on the billing statement. If you call, you must confirm the call in writing within 14 days. A written stop payment order will remain in effect for six months unless renewed in writing.

Once a charge is made through the use of the card or account number we cannot "stop payment" on the charge. If there is a dispute involving a charge on your account, please refer to the section entitled "What To Do If There's An Error In Your Bill".

## Lost or Stolen Cards, Account Numbers or Citibank Checks:

If any card, account number or Citibank check is lost or stolen or if you think someone used or may use them without your permission, notify us at once by calling the telephone number shown on the billing statement or the number obtained by calling toll-free or local Directory Assistance. We may require you to provide certain information in writing to help us find out what happened. Don't use the card or the Citibank checks after we've been notified, even if they are found or returned. You may be liable for unauthorized use of the card, but not for more than $50. You won't be liable for unauthorized purchases or cash advances made after we've been notified of the loss or the theft; however, you must identify for us the charges on the billing statement that were not made by you, or someone authorized by you, and from which you received no benefit.

## Default:

You default under this Agreement if you fail to pay the minimum payment listed on each billing statement when due, fail to make a payment to any other creditor when due, file for bankruptcy, exceed your credit line without permission, pay by a check or similar instrument that is not honored or that we must return because it cannot be processed, pay by automatic debit that is returned unpaid, or default on any other Citibank Card Agreement. If you default, we may close your account and demand immediate payment of the full balance. If you have given us a security interest in a certificate of deposit or a savings account, we may use the deposit amount to pay any amount you owe.





## Preauthorized Charges:

If you default, if the card is lost or stolen, or we change your account or account number for any reason, we may suspend automatic charges on that account to third-party vendors for insurance premiums or other goods or services. If preauthorized charges are suspended, you must contact the third-party vendor(s) and arrange to make other payment arrangements for those charges until we notify you to reinstate those payments. You are responsible for making direct payment until you reinstate automatic charges.

## Collection Costs:

If we refer collection of your account to a lawyer who is not our salaried employee, you will have to pay our attorney's fee plus court costs or any other fees, to the extent permitted by law. If we are to collect and you win, we will pay your reasonable attorney's/legal fees and court costs.

## Customer Privacy:

We will safeguard, according to strict standards of security and confidentiality, any information you share with us. We will limit the collection and use of any such information to the minimum we require in order to deliver you superior service, which includes advising you about our products, services, and other opportunities, and to administer our business. We will permit only authorized employees—who are trained in the proper handling of customer information, to have access to your information. Whenever we hire other organizations to provide support services, we will require them to conform to our privacy standards and to allow us to audit them for compliance.

We will always maintain control over the confidentiality of your information. We will, however, facilitate relevant marketing and promotional offers from reputable companies that we feel may interest you. Specifically, if you expressed interest in their products or services. If you do not want to receive these offers, write or call us at the address or telephone number listed on the billing statement. Be sure to include your name, address, and account number. We will remind you at least once each year of your right to be excluded from these offers.

We may report your performance under this Agreement to credit reporting agencies, including your failure to make minimum payments on time. If you request additional cards on your account for others, you understand that we may report account information in your name as well as in the names of users other persons. We may also obtain follow-up credit reports on you (for example, when we review your account for a credit line increase). If you wish to know the names of the agencies we have contacted, write us at the address listed on the billing statement. We will try to notify you by an opportunity to object to it, unless the law prohibits the notice.

Except as set forth in this Agreement and except for reports to credit reporting agencies or responses to subpoenas, or in order to give you an opportunity to object to it, unless the law prohibits the notice. We may not give out information about your account or your share with Citibank affiliates and information we share in connection with collection of your account, no one else will be given information about your account without your knowledge, express authorization or proper legal authority.

## Sharing Customer Information Among Citibank Affiliates:

To tell you of products and provide you with products and services that are related specifically to you, Citibank affiliates share information about you on a confidential basis.

Citibank affiliates are permitted by law to share any information about their

---

transactions or experiences with you. Other information you provide to us or that we obtain from third parties (for example, credit bureaus) will not be shared if you notify us that you do not want such information shared among Citibank affiliates.

If your name is in writing of your instruction at any time. Please send your name and address (as it appears on your account statement), along with your account type, account number and Social Security number to Citibank Processing Center, P.O. Box 6372, South Hackensack, NJ 07606. We ask that you send us this instruction in a stamped envelope that does not include any other correspondence. If you have already told us in writing that you do not want such other information shared, it was effective immediately. You do not need to repeat the information.

If you are also a customer of other Citigroup companies (such as Commercial Credit, Travelers Property Casualty, Travelers Life & Annuity, Salomon Smith Barney and Primerica Financial Services) and you receive a notice of their intent to share certain information about you with their affiliates, you will need to separately notify them if you do not want such information shared.

## Telephone Monitoring and Recording:

From time to time we may monitor and record your telephone calls regarding your account with us to assure the quality of our service.

## Correcting Your Credit Report:

If you think we reported erroneous information to a credit reporting agency, write us at the address listed on the billing statement. We will promptly investigate the matter and if our investigation shows you are right, we will contact each credit reporting agency to whom we reported and will request you correct it. If you disagree with you after our investigation, we will tell you in writing by telephone and instruct you how to submit a statement of your position to those agencies. Your statement will become a part of your credit record with them.

## Closing Your Account:

You may close your account at any time by notifying us in writing. However, you remain responsible to pay the balance according to the terms of this Agreement. We may close your account or suspend your account privileges at any time without prior notice. We may also reissue a different card or account number at any time. You must return the card to us upon request.

## Refusal of the Card:

We are not responsible if a purchase or cash advance on your account is not approved, either by us or by a third party, even if you have sufficient credit available. We may limit the number of purchases or cash advances which may be approved in one day. If we detect unusual or suspicious activity on your account, we may temporarily suspend your credit privileges until we can verify the activity. We may approve purchases or cash advances which cause the balance to exceed your credit line without waiving any of our rights under this Agreement.

## Changing this Agreement:

We can change this Agreement, including all fees and the annual percentage rate, at any time. However, if the change will cause a fee, rate or minimum payment to increase, we will mail you written notice at least 15 days before the beginning of the billing period in which the change becomes effective. If you use the card after receiving the notice, you must pay the finance charge, in 25 days after the effective date of the change and pay us the balance, either at once



or under the terms of this unchanged Agreement. Otherwise, the change in the notice is binding on you. Unless we notify you otherwise, use of the card after the effective date of the change shall be deemed acceptance of the new terms, even if the 25 days have not expired.

## Enforcing this Agreement:

We can delay in enforcing or fail to enforce any of our rights under this Agreement without losing them.

## Assignment:

We reserve the right to assign any or all of our rights and obligations under this Agreement to a third party.

## Applicable Law:

The terms and enforcement of this Agreement shall be governed by federal law and the laws of South Dakota, where we are located.

## For Further Information:

Call us at the telephone number shown on the front of the billing statement. You can also call toll-free or local Directory Assistance to get our telephone number.

Thomas W. Jones
President & CEO

©1999 Citibank (South Dakota), N.A.

Citibank (South Dakota), N.A.
P.O. Box 6000
Sioux Falls, SD 57117

## What To Do If There's An Error In Your Bill:

### Your Billing Rights. Keep This Notice For Future Use.

This notice contains important information about your rights and our responsibilities under the Fair Credit Billing Act.

### Notify Us In Case of Errors or Questions About Your Bill.

If you think your billing statement is wrong, or if you need more information about a transaction on your billing statement, write to us (on a separate sheet) at the address shown on the front of your billing statement. Write to us as soon as possible. We must hear from you no later than 60 days after we sent you the first billing statement on which the error or problem appeared. You can telephone us, but doing so will not preserve your rights.

In your letter, give us the following information:
☒ Your name and account number.
☒ The dollar amount of the suspected error.
☒ Describe the error and explain, if you can, why you believe there is an error. If you need more information, describe the item you are not sure about.
☒ Please sign your letter.

If you have authorized us to pay your credit card bill automatically from your savings or checking account you can stop the payment on any amount you think is wrong. To stop the payment you must tell us at least three business days before the automatic payment is scheduled to occur.

## Your Rights and Our Responsibilities After We Receive Your Written Notice:

We must acknowledge your letter within 30 days, unless we have corrected the error by then. Within 90 days, we must either correct the error or explain why we believe your billing statement was correct. After we receive your letter, we cannot try to collect any amount you question, or report your account as delinquent. We can continue to bill you for the amount you question, including finance charges, and we can apply any unpaid amount against your credit line. You do not have to pay any questioned amount while we are investigating, but you are still obligated to pay the parts of your balance that are not in question.

If we find that we made a mistake on your billing statement, you will not have to pay any finance charges related to any questioned amount. If we didn't make a mistake, you may have to pay finance charges, and you will have to make up any missed payments on the questioned amount. In either case, we will send you a statement of the amount you owe and the date it is due.

If you fail to pay the amount that you think you owe, we may report you as delinquent. However, if our explanation does not satisfy you and you write to us within 10 days telling us that you still refuse to pay, we must tell anyone we report you to that you have a question about your bill. And, we must tell you the name and address of anyone to whom we reported your account information. We must tell anyone we report you to that the matter has been settled between us when it is finally settled.

If we don't follow these rules, we can't collect the first $50 of the questioned amount, even if your billing statement was correct.

## Special Rule for Credit Card Purchases.

If you have a problem with the quality of property or services that you purchased with a credit card, and you have tried in good faith to correct the problem with the merchant, you may have the right not to pay the remaining amount due on the property or services. There are two limitations on this right:
☒ You must have made the purchase in your home state or, if not within your home state, within 100 miles of your current address; and
☒ The purchase price must have been more than $50.

These limitations do not apply if we own or operate the merchant, or if we mailed you the advertisement for the property or services.

8049170-D
PR 10098 REV 9/99

9

RECEIVED AND FILED

09 JUL -6  PM 12: 54

CLERK OF COURT
BEDFORD MUNICIPAL COURT

IN THE BEDFORD MUNICIPAL COURT
BEDFORD, OHIO

| | | |
|---|---|---|
| NCO Portfolio Management, | ) | CASE NO: 09 CVF 03317 |
| | ) | |
| Plaintiff and | ) | |
| Counter-Defendant | ) | **Judge** |
| | ) | |
| vs. | ) | |
| | ) | |
| Christopher G. Hrivnak | ) | |
| | ) | |
| Defendant and | ) | |
| Counterclaim Plaintiff | ) | |
| | ) | |
| vs. | ) | |
| | ) | |
| NCO Portfolio Management, Inc. | ) | |
| 507 Prudential Road | ) | |
| Horsham PA 19044 | ) | |
| | ) | |
| And | ) | |
| | ) | |
| NCO Group, Inc. | ) | |
| 507 Prudential Road | ) | |
| Horsham PA 19044 | ) | |
| | ) | |
| And | ) | |
| | ) | |
| NCO Financial Systems, Inc. | ) | |
| 507 Prudential Road | ) | |
| Horsham PA 19044 | ) | |
| | ) | |
| And | ) | |
| | ) | |
| Javitch, Block & Rathbone L.L.P. | ) | |
| 1100 Superior Avenue - 19th Floor | ) | |
| Cleveland, Ohio 44114-2518 | ) | DEFENDANT'S ANSWER AND COUNTERCLAIM WITH |
| | ) | JOINDER OF ADDITIONAL COUNTER-DEFENDANTS |
| Additional | ) | |
| Counter-Defendants | ) | |

## Answer

1.    Denies.

2.    Denies.

3.    Denies.

4.    Denies.

5.    Denies.

6.    Denies.

7.    Denies.

8.    Denies.

9.    Denies.

## Affirmative Defenses

10.    The complaint fails to state a claim upon which relief may be granted.

11.    The complaint fails to join necessary parties under Rule 19.

12.    The complaint is barred in whole or in part by the statute of frauds.

13.    The court lacks jurisdiction.

14.    Plaintiff lacks standing to sue.

15.    Plaintiff lacks legal capacity or competence to sue.

16.    Plaintiff is not the real party in interest.

17.    Laches, waiver, and/or estoppel.

18.    Statute of limitations.

19.    Illegality.

20.    Fraud.

21.    Other matters constituting affirmative defenses are set forth in the following
       counterclaim or otherwise applicable.

22.    Plaintiff's claims are barred by additional defenses to be identified during this litigation
       that defendant reserves the right to assert.

## Counterclaim

23.    Defendant incorporates his previous admissions, denials, and averments.

24.   This counterclaim is an action for damages and other relief by a consumer for Counter-Defendants' violations of the Fair Debt Collection Practices Act, 15 U.S.C. 1692, et seq.; ("FDCPA"), the Ohio Consumer Sales Practices Act, Ohio Revised Code 1345.01 et seq. ("OCSPA"), Ohio Deceptive Trade Practices Act, Ohio Revised Code 4165.01 et seq. ("ODTPA"), and common law fraud, defamation, and civil conspiracy.

25.   Defendant Christopher G. Hrivnak is a "Consumer" as defined in the Ohio Consumer Sales Practice Act, R.C. § 1345.01(D) and similar consumer protection statutes.

26.   Plaintiff NCO Portfolio Management, "Portfolio", is a firm regularly engaged in the collection of consumer debts in this state.

27.   Portfolio is a "debt collector" as defined in 15 U.S.C. §1692a(6) and similar consumer protection statutes.

28.   Portfolio is a "supplier" as defined in Ohio R.C. § 1345.01(C) and similar consumer protection statutes.

29.   Counter-Defendant NCO Portfolio Management, Inc., "PMI" is a firm regularly engaged in the collection of consumer debts in this state.

30.   Counter-Defendant NCO Financial Systems, Inc., "FSI" is a firm regularly engaged in the collection of consumer debts in this state.

31.   Counter-Defendant NCO Group, Inc., "NCOG" is an operator of Portfolio, PMI and FSI.

32.   NCOG through its operation of Portfolio, PMI and FSI is a firm regularly engaged in the collection of consumer debts in this state.

33.   NCOG, PMI and FSI are each a "debt collector" as defined in 15 U.S.C. §1692a(6) and similar consumer protection statutes.

34.   NCOG, PMI and FSI are each a "supplier" as defined in Ohio R.C. § 1345.01(C) and similar consumer protection statutes.

35.   On information and belief, Portfolio, PMI and FSI each take, commit or perform the unlawful actions that are the subject of this Counterclaim.

36.   On information and belief, NCOG takes individual actions in directing the unlawful actions of Portfolio, PMI and FSI that are the subject of this Counterclaim; authorizing or creating

the procedures and business practices employed by Portfolio, PMI or FSI in furtherance of such unlawful actions; obtaining, transferring and making available to Portfolio, PMI or FSI the alleged claims to be made against consumers including Mr. Hrivnak; conspiring with Portfolio, PMI and FSI to commit the unlawful actions, and providing necessary resources for the unlawful actions to be taken.

37. Hereafter, when referred to collectively, Counter-Defendants Portfolio, NCOG, PMI and FSI will be referred to as "NCO."

38. Counter-Defendant Javitch, Block & Rathbone L.L.P. ("Javitch") is a law firm regularly engaged in the collection of debts with its principal place of business located at 1100 Superior Avenue, 19th Floor, Cleveland, Ohio 44114.

39. Javitch is a "debt collector" as defined in 15 U.S.C. §1692a(6).

40. Javitch is a "supplier" as defined in Ohio R.C. § 1345.01(C) and similar consumer protection statutes.

41. Several courts have already determined that Javitch is a debt collector, who is subject to the FDCPA and OCSPA, for actions it takes in collection lawsuits while representing buyers of debt in default, who sue consumers alleging an assignment of debt.  These cases are examples of such a determination of Javitch's status: *Hartman et al. v. Great Seneca Financial Corp. et al.*, U.S. Ct. of App., 6th Cir., Opinion 09a0221p.06 (June 30, 2009); *Evans v. Midland Funding LLC*, No. 1:08-cv-180 (S. Dist. Ohio, Aug. 8, 2008); *Williams v. Javitch, Block & Rathbone*, LLP, 480 F. Supp.2d 1016, 1024 (S. Dist. Ohio 2007).

42. NCO are engaged in the business of buying debt in default, and thereafter attempting to collect the debt.

43. In this case, Portfolio has brought a claim against Mr. Hrivnak based on an alleged debt in default that it claims to have purchased.

44. Bringing legal actions is an integral and important part of NCO's debt collection business.

45. NCO has filed thousands of unlawful consumer collection lawsuits making false statements, using false documents and with full knowledge that many lawsuits were being filed well beyond the applicable period of limitations.

46. This lawsuit against Mr. Hrivnak is one of the unlawful lawsuits described in the preceding paragraph.

47. In such lawsuits, NCO demand interest and costs.

48. Such lawsuits are based on debt allegedly acquired by NCO.

49. Such debt is already in default at the time it is so acquired by NCO.

50. At the time of acquisition and before filing the unlawful lawsuits, NCO know or should know about the lack of documentation as to the validity of the debt or to plead or prove liability for the amount claimed due, and the amount of interest contractually due.

51. The prices paid by NCO for the acquired debt reflect NCO's knowledge of the lack of such documentation.

52. NCO commence or cause to commence the unlawful lawsuits without adequate or reasonable investigation of the debt sought to be collected.

53. On information and belief, in order to conceal their inadequate investigation or to appear to meet pleading obligations, NCO and Javitch either fail to attach required documents to filed pleadings or attach documents that falsely represent the amount due or the agreement under which a consumer is allegedly bound.

54. Through such false documents and associated language in the pleadings, NCO and Javitch implicitly represent the existence and availability of agreements that entitle NCO to claimed amounts.

55. In this case and other cases where Javitch has represented one of more of the NCO entities, or their affiliates, Javitch has itself taken the unlawful individual actions described in this counterclaim.   Each such action violates consumer protection and other laws cited in this counterclaim, independent and apart from any action that may be taken by NCO.

56. Each of the above described actions, and those upon which Mr. Hrivnak's claims are based, is a "Consumer Transaction" as defined in Ohio R.C. 1345.01(A) and similar consumer protection statutes.

57. On information and belief, NCO act in collaboration in the filing of unlawful lawsuits against consumers and to commit the unlawful acts described in this counterclaim.

58. On information and belief, NCO also collaborate with others, such as Javitch, in the filing of unlawful lawsuits against consumers and to commit the unlawful acts described in this counterclaim.

59. The claims made by NCO in its case against Mr. Hrivnak are false.

60. NCO has no claim against Mr. Hrivnak that would not be time-barred if filed on the same day that the complaint in this case was filed.

61. Counter-Defendants NCO and Javitch knowingly made or caused to be made false statements in the complaint as to the fact, nature and amount of the debt allegedly owed by Mr. Hrivnak.

62. NCO and Javitch knowingly made or caused to be made false statements in the complaint as to the investigation they conducted to determine the truth of the claims made in the complaint.

63. NCO and Javitch knowingly made or caused to be made false statements in the complaint as to the efforts they made to meet obligations imposed upon them by the Ohio Rules of Civil Procedure.

64. NCO and Javitch filed the lawsuit against Mr. Hrivnak despite knowing that they were incompetent to do so because the statute of limitations had already expired.

65. NCO and Javitch concealed their incompetence to file the lawsuit despite being obligated to disclose such incompetence by the Ohio Rules of Civil Procedure.

66. NCO and Javitch demanded interest and costs in the lawsuit knowing that they did not have the ability to do so.

67. NCO and Javitch reported or caused to be reported inaccurate credit information about Mr. Hrivnak, as to the illegally filed lawsuit, which they knew or should have known was false.

### Class Allegations

68. Mr. Hrivnak repeats and realleges and incorporates by reference preceding paragraphs.

69. Counts One through Six of this Counterclaim are brought on behalf of Mr. Hrivnak and a class of Consumers, similarly situated to Mr. Hrivnak, who have been or may be subjected

to Counter-Defendants' unlawful collection related practices.

70. There are two classes of Consumers, and Mr. Hrivnak is a member of both classes.

71. The first class of Consumers consists of all persons who were named as a defendant in a civil action in which an NCO entity was the named plaintiff and which action was filed beyond the period of limitations.

72. The second class of Consumers consists of all persons who were named as a defendant in a civil action in which an NCO entity was the named plaintiff, and the complaint filed therein falsely represented the agreement under which a consumer was allegedly bound.

73. Certification of a class under Ohio Civil Rule 23 is appropriate in that the class is so numerous that joinder of all members is impracticable, there are questions of law or fact common to the class, the claims of the representative party are typical of the claims of the class, and the representative will fairly and adequately protect the interests of the class.

74. The class is so numerous that joinder of all members is impracticable.

75. NCO, in collaboration with Javitch or others, has filed numerous cases without having the legal competence to do so.

76. It is therefore reasonable to infer that the number of class members exceeds those required for satisfaction of the numerosity requirement.

77. There are questions of law and fact common to the class, including the nature and extent of Counter-Defendants' collection practices, procedures and policies, and whether these practices, procedures and policies violate consumer protection laws including the Fair Debt Collection Practices Act.

78. These common questions of law or fact predominate over any questions affecting only individual members.

79. A class action is superior to other available methods for the fair and efficient adjudication of this controversy.

80. The claims and defenses of Mr. Hrivnak are typical of the claims and defenses of the class members.   All are based on the same legal and factual theories and predominant common questions.

81. Mr. Hrivnak will fairly and adequately protect the interest of the class.   He has a substantial pecuniary stake in the controversy, and has retained experienced counsel. Neither Mr. Hrivnak nor his counsel have any interests which might cause them not to vigorously pursue this action.

82. Counter-Defendants have acted or refused to act on grounds generally applicable to the class, thereby making appropriate final injunctive relief or corresponding declaratory relief with respect to the class as a whole.

83. Each class member's claim is relatively small, thus it is impracticable for class members to file individual actions.   Also, because Counter-Defendants are well capitalized entities and effective presentation of the causes of action asserted requires significant expense, the interest of members of the class in individually controlling the prosecution or defense of separate actions is minimal.

84. NCO, in collaboration with Javitch and others, institute collection actions and secure default judgments against Consumers, thus Consumers are unaware of their rights.   A class action is therefore essential to prevent a failure of justice.

85. The difficulties likely to be encountered in the management of this class action are much less than in the case of many types of actions routinely certified, such as class actions for securities fraud.

## Count One -  Class Claim: FDCPA

86. Mr. Hrivnak repeats and realleges and incorporates by reference preceding paragraphs.

87. NCO and Javitch are "debt collectors" as defined by the FDCPA, 15 U.S.C. § 1692a(6).

88. NCO and Javitch violated the FDCPA through their consumer debt collection activities.

89. Counter-Defendants' violations include, but are not limited to, the following:

   a. Counter-Defendants violated 15 U.S.C. § 1692e when they commenced and maintained time-barred debt collection lawsuits against Mr. Hrivnak and class members, even though they did not have the legal right to do so.

   b. Counter-Defendants violated 15 U.S.C. § 1692e and § 1692f when they made false,

misleading and/or unfounded representations in lawsuits as to agreements under which a consumer was allegedly bound.

c.   Counter-Defendants violated 15 U.S.C. § 1692f when they demanded payment for costs and interest in such lawsuits.

d.   Counter-Defendants violated 15 U.S.C. § 1692e(8) by reporting or causing to report inaccurate credit information, as to the illegally filed lawsuits, which they knew or should have known was false.

e.   Counter-Defendants violated 15 U.S.C. § 1692e, § 1692f and § 1692d when they employed a pattern and practice of filing invalid lawsuits, with inadequate investigation of the debt before filing the lawsuit, with the use of false documents and false representations with the improper motive of cheating unsuspecting or unsophisticated consumers.

90.   Mr. Hrivnak and the class suffered damages as a result of Counter-Defendants' violations.

91.   As a result of the violations of the FDCPA, Counter-Defendants are liable to Mr. Hrivnak and the class for declaratory judgment that Counter-Defendants' conduct violated the FDCPA, and actual damages, statutory damages, and costs and attorney's fees.

### Count Two -  Class Claim: Deceptive, Unfair or Unconscionable Acts

92.   Mr. Hrivnak repeats and realleges and incorporates by reference all the preceding paragraphs.

93.   Transactions between Counter-Defendants and the class are consumer transactions.

94.   In connection therewith, Counter-Defendants knowingly committed unfair, deceptive and/or unconscionable acts or practices.

95.   These acts of the Counter-Defendants, to violate OCSPA, have been determined by courts of this state to violate Ohio R.C. § 1345.02 or Ohio RC § 1345.03, and were committed by Counter-Defendants after such decisions were made available for public inspection under Ohio R.C. § 1345.05(A)(3).

96.   Such conduct included:

a.  Actions taken in violation of FDCPA;

b.  Actions taken to commence and maintain debt collection lawsuits against the class members, even though they did not have the legal right to do so.

c.  Actions taken to commence and maintain debt collection lawsuits against the class members, with the use of false or misleading representations in such lawsuits;.

97.  Mr. Hrivnak and the class suffered damages as a result of Counter-Defendants' violations.

## Count Three - Class Claim: Deceptive Trade Practices

98.  Mr. Hrivnak repeats and realleges and incorporates by reference all the preceding paragraphs.

99.  Counter-Defendants knowingly engaged in deceptive trade practices in violation of Ohio R.C. §4165.02(A)(2), §4165.02(A)(7), and §4165.02(A)(9) by misrepresenting the origin, nature and validity of the illegally filed lawsuits and the monetary elements constituting the sums claimed as due from Mr. Hrivnak and the class he seeks to represent.

100.  Mr. Hrivnak and the class were injured and are likely to suffer further injury as a result of the deceptive trade practices of the Counter-Defendants.

## Count Four - Class Claim: Civil Conspiracy

101.  Mr. Hrivnak repeats and realleges and incorporates by reference all the preceding paragraphs.

102.  NCO created joint collection platforms and strategies and acted in concert, with each other and with Javitch, under an agreement to commit the unlawful acts described above, and to initiate lawsuits in an unlawful manner.

103.  In accordance with agreement, plan or understanding, one or more of the Counter-Defendants did commit the above described unlawful acts against Mr. Hrivnak and the class.

104.  Mr. Hrivnak and the class suffered injury as a result of these actions.

105.  Counter-Defendants therefore committed the tort of civil conspiracy.

## Count Five -  Class Claim: Abuse of Process

106. Mr. Hrivnak repeats and realleges and incorporates by reference all the preceding paragraphs.

107. Counter-Defendants filed time-barred collection actions against consumers.

108. Counter- Defendants filed such actions for the improper purpose of placing unwarranted pressure upon consumers to make payments or face damage to their credit history, for the improper purpose of taking unfair advantage of unsophisticated consumers, or for the improper purpose of obtaining more money from consumers than Counter-Defendants' knew could possibly be due, owing or payable on an underlying obligation.

109. Consumers, like Mr. Hrivnak and the class he seeks to represent, have suffered and continue to suffer damage as a direct result of this wrongful use of process.

110. Counter-Defendants have therefore committed the tort of abuse of process.

111. Mr. Hrivnak and the class were injured as a result of Counter-Defendants' actions.

## Count Six -  Class Claim: Defamation

112. Mr. Hrivnak repeats and realleges and incorporates by reference all the preceding paragraphs.

113. Counter-Defendants published false information about Mr. Hrivnak and the class by disseminating or causing information to be disseminated that these consumers were the subject of legally authorized collection lawsuits.

114. Such defamatory information was published to the public, prospective employers, potential creditors, or merchants causing injury to the reputation generally and credit reputation in particular of Mr. Hrivnak and the class.

115. Mr. Hrivnak alleges that the publication of such defamatory information by Counter-Defendants was done maliciously, without privilege, and with intent to apply undue coercion and to injure Mr. Hrivnak and the class.

116. Counter-Defendants have therefore defamed Mr. Hrivnak and the class.

117. Mr. Hrivnak and the class suffer continuing injury from the defamatory publications by

Counter-Defendants.

### Count Seven - Individual Claim: FDCPA

118. Mr. Hrivnak repeats and realleges and incorporates by reference all the preceding paragraphs.

119. Counter-Defendants falsely represented the amount and character of the alleged debt by falsely stating, in the Complaint, that Mr. Hrivnak owed $11,481.84 "on the contract." See Complaint ¶ 6.

120. Counter-Defendants violated the FDCPA, including 15 U.S.C. § 1692e(2)(A).

121. Mr. Hrivnak was injured as a result of the actions of Counter-Defendants.

### Count Eight - Individual Claim: Ohio CSPA

122. Mr. Hrivnak repeats and realleges and incorporates by reference all the preceding paragraphs.

123. Counter-Defendants also knowingly committed unfair, deceptive and/or unconscionable acts or practices through the above actions described under Count Seven, including actions taken in violation of statutory obligations.

124. Mr. Hrivnak was injured as a result of the actions of Counter-Defendants.

### Count Nine - Individual Claim: Fraud

125. Mr. Hrivnak repeats and realleges and incorporates by reference all the preceding paragraphs.

126. Counter-Defendants committed fraud by falsely stating, in the Complaint, that Mr. Hrivnak owed $11,481.84 "on the contract." See Complaint ¶ 6.

127. Such false representations were made to the court and to Mr. Hrivnak.

128. The dates, times and place of such false representations are documented in the court docket for this case.

129. Counter-Defendants knew or should have known of the falsity of these representations.

130. Counter-Defendants made such false representations with the purpose and intention to

mislead Mr. Hrivnak and the court.

131. Mr. Hrivnak and the court were justified in relying upon such representations and did so rely.

132. Mr. Hrivnak suffered damages as a proximate result of such reliance.

## Count Ten - Claim: Civil Conspiracy

133. Mr. Hrivnak repeats and realleges and incorporates by reference all the preceding paragraphs.

134. Counter-Defendants created joint collection plans and strategies and acted in concert with each other and under an agreement to commit the unlawful acts described in Counts Seven through Nine above.

135. In accordance with agreement, plan or understanding, Counter-Defendants did commit the above described unlawful acts against Mr. Hrivnak.

136. Mr. Hrivnak suffered injury as a result of these actions.

137. Counter-Defendants therefore committed the tort of civil conspiracy.

### Damages

138. Mr. Hrivnak and each member of the class described above have been or may be injured by Counter-Defendants' unlawful acts and practices, in one or more of the following ways:

   a. Monetary, reputation or credit injuries.

   b. Expenditure of money, time or effort in resisting Counter-Defendants' illegal actions.

   c. Creation of an unlawful and fictitious indebtedness, for which the consumer is ostensibly liable.

   d. Payment of charges which are unreasonable, unnecessary or a penalty.

WHEREFORE, Mr. Hrivnak respectfully requests that judgment be entered against Counter-Defendants for the following:

   a. Award statutory, compensatory and punitive damages in an amount exceeding $25,000.00.

   b. Order Counter-Defendants to establish procedures which will prevent attempts or

actions to collect debt through conduct, as alleged in this case, which violates applicable federal or state laws.

c. Order Counter-Defendants to operate according to procedures which will prevent attempts or actions to collect debt through conduct, as alleged in this case, which violates applicable federal or state laws.

d. Order Counter-Defendants to refrain from all debt collection activities for a period of years as the court in its discretion may determine.

e. Award attorney's fees, costs, and expenses.

f. Award any other relief to which Mr. Hrivnak and the class may be entitled to in law or equity.

g. Make declaratory judgments and order such other and further relief as may be just and proper.

Defendant Hrivnak demands a jury to hear and decide all issues triable to a jury.

Respectfully submitted,

Robert S. Belovich (#0024187)
5638 Ridge Road
Parma, Ohio 44129
(440) 884-8018
rsb@belovichlaw.com

Anand N. Misra (#0067594)
The Misra Law Firm, LLC
3659 Green Road, Suite 100
Beachwood, Ohio 44122
(216) 752 3330
misraan@misralaw.com

Attorneys for Defendant

**Certificate of Service**

I hereby certify that a copy of the foregoing was served on counsel for Plaintiff, Brian C. Block, Esq., Javitch, Block & Rathbone LLP, 1100 Superior Ave, 19th Floor, Cleveland OH 44114-2518, on July 6, 2009, by regular mail postage prepaid.

Robert S. Belovich
One of the Attorneys for Defendant

## THE MISRA LAW FIRM, LLC

**Anand N. Misra**
Attorney at Law
*direct dial*  216/752-3330
*e-mail:* misraan@misralaw.com
LICENSED IN DISTRICT OF COLUMBIA, NEW YORK & OHIO

RECEIVED AND FILED

09 JUL 23 AM 11:41

CLERK OF COURT
BEDFORD MUNICIPAL COURT

June 22, 2009

Clerk of Courts
Bedford Municipal Court
Bedford, Ohio

RE:     NCO Portfolio Management, et al. v. Hrivnak; Case No: **09 CVF 03317**.

Dear Madam/Sir:

The counterclaim filed in this case alleges a claim for an amount exceeding $25,000.00. Because the claim exceeds the monetary jurisdiction of this court, the case should be transferred to the Cuyahoga County Court of Common Pleas.

Sincerely yours,

Anand N. Misra
Co-Counsel for Defendant

RECEIVED AND FILED

**IN THE BEDFORD MUNICIPAL COURT**
09 JUL 24  AM 10: 42
**CUYAHOGA COUNTY, OHIO**

CLERK OF COURT
BEDFORD MUNICIPAL COURT

| | |
|---|---|
| NCO Portfolio Management, | )  CASE NO.: 09 CVF 03317D |
| | ) |
| Plaintiff, | ) |
| | ) |
| vs. | ) |
| | ) |
| Christopher Hrivnak, | ) |
| | ) |
| Defendant. | ) |
| vs. | ) |

NCO Portfolio Management, et al.,

Third Party Defendants.

### Motion for extension of time to answer, move or otherwise plead

Now comes NCO Portfolio Management, NCO Portfolio Management, Inc., NGO Group, Inc., and NCO Financial Systems, Inc., by and through the undersigned counsel, and hereby moves for an extension of time to answer, move or otherwise plead in response to the Defendant's Counterclaim until September 1, 2009. Counsel for Defendant consented to the proposed extension of time by telephone on July 23, 2009.

Respectfully Submitted:

_____

Michael D. Slodov, SCR #0051678
Javitch, Block, & Rathbone LLP
1100 Superior Ave., 19th Floor
Cleveland, Ohio 44114
Ph:     (216) 623-0000 ex. 3057
Fax:    (216) 685-3038
E-mail: mslodov@jbandr.com

## Certificate of Service

The undersigned hereby certifies that the foregoing motion to strike was served upon Robert Belovich, attorney for the Defendant, at 5638 Ridge Road, Parma, OH, 44129 and Anand N. Misra, The Misra Law Firm, LLC, 3659 Green Road, Suite 100, Beachwood, Ohio 44122, via regular U.S. Mail postage pre-paid, this July 2X, 2009.

Respectfully Submitted:

_____
Michael D. Slodov, SCR #0051678

RECEIVED AND FILED

# IN THE BEDFORD MUNICIPAL COURT
## CUYAHOGA COUNTY, OHIO

09 JUL 24  AM 10: 42

CLERK OF COURT
BEDFORD MUNICIPAL COURT

| | | |
|---|---|---|
| NCO Portfolio Management, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | CASE NO.: 09 CVF 03317 |
| | ) | |
| Christopher Hrivnak, | ) | |
| | ) | |
| Defendant. | ) | |
| vs. | ) | |
| | ) | |
| NCO Portfolio Management, et al., | ) | |
| | ) | |
| Third Party Defendants. | ) | |

## Motion to Quash Service of Process, Dismiss, Strike or Sever
## Defendant's Counterclaim with Joinder of Additional Counter-defendants

Now comes Javitch, Block & Rathbone, LLP, by and through the undersigned counsel, and hereby moves this honorable court pursuant to Civ.R. 12(B)(1), 12(B)(2), 12(B)(6), 12(F) 14, 19(B), 20(B) and 21, to quash service of process, dismiss, strike or sever Defendant's "Counterclaim with Joinder of Additional Counter-defendants" where Defendant asserts counterclaims claims against NGO Group, Inc., NCO Financial Systems, Inc. and Javitch, Block & Rathbone, LLP. The reasons for this motion are more fully set forth in the brief in support, attached hereto and incorporated herein by reference.

Respectfully Submitted:

_____
Michael D. Slodov, SCR #0051678
Javitch, Block, & Rathbone LLP
1100 Superior Ave., 19th Floor
Cleveland, Ohio 44114
Ph:      (216) 623-0000 ex. 3057
Fax:     (216) 685-3038
E-mail: mslodov@jbandr.com

1

**Certificate of Service**

The undersigned hereby certifies that the foregoing motion to strike was served upon Robert Belovich, attorney for the Defendant, at 5638 Ridge Road, Parma, OH, 44129 and Anand N. Misra, The Misra Law Firm, LLC, 3659 Green Road, Suite 100, Beachwood, Ohio 44122, via regular U.S. Mail postage pre-paid, this July 2, 2009.

Respectfully Submitted:

_____
Michael D. Slodov, SCR #0051678

## IN THE BEDFORD MUNICIPAL COURT
## CUYAHOGA COUNTY, OHIO

NCO Portfolio Management,    )
                                )
        Plaintiff,        )
                                )
vs.                          )
                                )    CASE NO.: 09 CVF 03317
Christopher Hrivnak,        )
                                )
        Defendant.    )
vs.                          )
                                )
NCO Portfolio Management, et al.,    )
                                )
    Third Party Defendants.    )

**Brief in Support of**
**Motion to Quash Service of Process, Dismiss, Strike or Sever**
**Defendant's Counterclaim with Joinder of Additional Counter-defendants**

**I.**    **Introduction**

    Plaintiff NCO Portfolio Management, Inc. (assignee of Citibank) filed suit against Defendant Christopher Hrivnak for an unpaid Citibank credit card debt.   Mr. Hrivnak filed an answer, and a "Counterclaim With Joinder of Additional Counter Defendants." The gravamen of the counterclaim here is that the Plaintiff sued on a debt barred by the statute of limitations, which is an affirmative defense. Civ.R. 8 (C). Rule 8(C) provides that where a party has mistakenly designated an affirmative defense as a counterclaim, the court should treat the pleading as if it had been properly designated. If the defense of the statute of limitations were made out, the Plaintiff's claim would be defeated. Only in the topsy -turvy world of a consumer advocate does an affirmative defense become actionable as false, deceptive or misleading under federal and state consumer protection laws warranting no less than a class action for inter alia, conspiracy, abuse of process, defamation and deceptive trade practices. Defendant alleges on his own behalf and on behalf of a class, that all the named "counter-defendants" have violated (conspired or engaged in): 1) the Fair Debt Collection

Practices Act; 2) the Ohio Consumer Sales Practices Act; 3) the Ohio Deceptive Trade Practices Act; 4) Civil Conspiracy; 5) Abuse of Process; 6) Defamation; and 7) fraud. Defendant seeks monetary damages in excess of $25,000, and a variety of other relief.

It is well-settled that Civ.R. 13(J) does not require the municipal court to certify a case to the common pleas court automatically upon the filing of a counterclaim that exceeds the municipal court's jurisdiction. *Crisalli v. Mearini* (8th Dist. App. 2004), 2004-Ohio-6018, at ¶ 2; Lewallen v. Mentor Lagoons, Inc. (8th Dist. App. 1993), 85 Ohio App.3d 91, 619 N.E.2d 98. Rather, the municipal court must first determine if the counterclaim satisfies the formalities of the civil rules and states a claim showing that the party is entitled to relief. *Id.*

Defendant's counterclaim seeks to add three additional parties: NCO Group, Inc.; NCO Financial Systems, Inc.; and Plaintiff's law firm Javitch, Block, & Rathbone, LLP. None of these entities was a party to this action as set forth in Plaintiff's complaint; none of the claims asserted against the three new parties satisfy Rule 13, 14(A), 19(A), 19.1(A), or 20(A).

## II. Argument

### A. Subject Matter Jurisdiction is Lacking

#### 1. Territorial & Monetary Jurisdiction

When presented with a Civ.R. 12(B)(1) motion to dismiss for lack of subject matter jurisdiction, a trial court is not limited to the allegations set forth in the complaint but may consider any pertinent matter in making its decision. *Howard v. Covenant Apostolic Church, Inc.* (1997), 124 Ohio App.3d 24, 705 N.E.2d 385. The issue for the trial court to determine is whether the complaint alleges any cause of action cognizable in the forum. Id

The counterclaims raised here are not within this court's subject matter jurisdiction for the following reasons. First, there is no authority for maintaining an FDCPA action in the municipal courts because they are not courts of general jurisdiction. As the legislature has not vested this court

with subject matter jurisdiction over FDCPA claims under R.C. § 1901.18, subject matter

jurisdiction is lacking. *White v. Chambers,* 2002 Westlaw 1299781, *1, 2002-Ohio-2733, 2733 (3d. Dist.

App. 2002); *Cleveland v. A.J. Rose Mfg. Co.,* 89 Ohio App.3d 267, 273, 624 N.E.2d 245, 249 (8th Dist.

App.1993). "[W]hen the court lacks this jurisdiction, it is without authority to certify the matter to

the court of common pleas. *Lin v. Reid* (1983), 11 Ohio App.3d 232, 236, 11 OBR 356, 360, 464

N.E.2d 189, 193. The court should have dismissed the counterclaims setting forth these causes of

action. Id." *Cleveland v. A.J. Rose Mfg. Co.* (8th Dist. App. 1993), 89 Ohio App.3d 267, 273-274, 624

N.E.2d 245, 249.

Second, territorial and monetary jurisdiction are also limits on this Court's subject matter

jurisdiction. In *Cheap Escape Co., Inc. v. Haddox, LLC,* 120 Ohio St.3d 493, 900 N.E.2d 601, 2008 -

Ohio- 6323, the Supreme Court of Ohio construed the jurisdiction of Ohio Municipal Courts and

held that both the territorial limits and monetary limits of municipal court jurisdiction are limits on

the subject matter jurisdiction of the Ohio Municipal Courts. The Court held:

> Unlike courts of common pleas, which are created by the Ohio Constitution and have
> statewide subject-matter jurisdiction, see Section 4(A) and (B), Article IV, Ohio Constitution,
> municipal courts are statutorily created, R.C. 1901.01, and their subject-matter jurisdiction is
> set by statute. R.C. 1901.18(A) provides the applicable law in this regard: "Except as otherwise
> provided in this division or section 1901.181 of the Revised Code, subject to the monetary
> jurisdiction of municipal courts as set forth in section 1901.17 of the Revised Code, a
> municipal court has original jurisdiction within its territory in all of the following actions or
> proceedings * * *." …

> {¶ 8} To resolve this case, we must specifically determine what the phrase "original
> jurisdiction within its territory" means. Appellant interprets the phrase to mean that a
> municipal court has subject-matter jurisdiction over any statutorily prescribed action,
> regardless of where the underlying events occurred. Conversely, appellee argues that the
> phrase limits subject-matter jurisdiction to those actions with a territorial connection to the
> court (e.g., the relevant events occurred within the territorial limits of the court). For the
> following reasons, we adopt appellee's view.

The Supreme Court affirmed the holding of the 10th Appellate District Court of Appeals, which held

that territorial jurisdiction in the Municipal Court jurisdictional statute is not the equivalent of venue,

but is instead, a limitation on its subject matter jurisdiction, which cannot be waived, conferred by

agreement and when absent, renders any such judgment void. The text of the Appellate opinion also considered and defined what facts are necessary to establish that a municipal court has territorial jurisdiction –

> [D]efendant contends a municipal court has subject matter jurisdiction over an action only when the following conditions are met: (1) the claim for damages is within the court's monetary jurisdiction under R.C.1901.17; (2) the cause of action is included within one of the categories specified in R.C.1901.18; and (3) the events giving rise to the claim occurred within the territorial jurisdiction of the municipal court. He maintains that an action is within the municipal court's territorial jurisdiction if it has sufficient contacts with the municipal court's territory, a result achieved only if: **(1) the subject matter of the action is located within the court's territorial limits; (2) at least one defendant resides within the court's territorial limits; or (3) at least one of the defendants was served within the court's territorial limits.**
>
> …

> {¶ 13} As a statutorily created court, Ohio municipal courts can exercise only such powers as statutes confer upon them. R.C.1901.01; *State v. Bellefontaine Municipal Court* (1967), 12 Ohio St.2d 26. The subject matter jurisdiction of the municipal court is set forth in R.C.1901.18. As pertinent here, it provides that "subject to the monetary jurisdiction of municipal courts as set forth in section 1901.17 of the Revised Code, a municipal court has original *jurisdiction within its territory* in * * * any action at law based on contract * * *." R.C.1901.18(A)(3). (Emphasis added.) "Territory" means the geographical areas within which municipal courts have jurisdiction, and R.C.1901.02 grants the Franklin County Municipal Court territorial jurisdiction within Franklin County. See R.C.1901.01 and 1901.03.

> {¶ 14} Defendant interprets the phrase "jurisdiction within its territory" to mean a municipal court's subject matter jurisdiction is limited to events that occur, or people that live, within its territorial boundary. In support of his interpretation, defendant notes that several appellate courts have determined territorial jurisdiction is an element of a municipal court's subject matter jurisdiction. Those courts thus have concluded a municipal court can hear an action only if: (1) the claim for damages is within the court's monetary jurisdiction; (2) the cause of action is included within one of the categories specified in R.C.1901.18; and (3) the events giving rise to the claim occurred within the territorial jurisdiction of the municipal court. See, e.g., *Stern v. Cleveland Browns Football Club, Inc.* (Dec. 20, 1996), Lake App. No. 95-L-196; *Rose v. Mays* (Nov. 1, 1995), Montgomery App. No. CA 15084; *Hickey v. Hancock Wood Elec. Coop.* (June 30, 1993), Wood App. No. 92WD082; *Goody v. Scott* (Oct. 18, 1995), Richland App. No. 95CA31.
> *     *     *

> {¶ 34} Because a municipal court's subject matter jurisdiction is expressly limited to those actions occurring within its territory, defendant's contention that the Franklin County Municipal Court lacked territorial jurisdiction is in fact a challenge to the court's subject matter jurisdiction, and neither stipulation nor agreement waived it. On the particular facts of this case, not one event giving rise to JB Dollar's breach of contract claim occurred within the territorial jurisdiction of the Franklin County Municipal Court, leaving that court without

4

subject matter jurisdiction over the action…. Without subject matter jurisdiction, the court's underlying judgment is void. Defendant's three assignments of error are sustained.

*Cheap Escape Co., Inc. v. Haddox, LLC* (10th Dist. App. 2007), 2007 Westlaw 2421814, 7.

Pursuant to R.C. § 1901.02(A) and (B), the Bedford municipal court has jurisdiction within the municipal corporations of Bedford, Bedford Heights, Oakwood, Glenwillow, Solon, Bentleyville, Chagrin Falls, Moreland Hills, Orange, Warrensville Heights, North Randall, and Woodmere, and within Warrensville and Chagrin Falls townships, in Cuyahoga county. Defendant's counterclaim makes reference to no act, practice or event occurring in any of the foregoing municipal corporations. With the exception of this case, Javitch, Block & Rathbone, NCO Group or NCO Financial Systems, have never been a party Plaintiff or Defendant to a court proceeding in this court. To the extent that the counterclaim seeks to bring in parties that engaged in no act, practice or event within the territory of this court, and to parties that have no territorial relationship to this court, the counterclaims, all of which are alleged to have been committed by "counter-defendants," "require . . . the presence of third parties of whom the court cannot acquire jurisdiction." *Hickey v. Hancock Wood Elec. Coop.* (6 Dist. App. 1993), 1993 Westlaw 241731, 4; United Artists Corp. v. Masterpiece Productions (C.A.2 1955), 221 F.2d 213, 217; 6 Wright, Miller & Kane, Federal Practice and Procedure, §1411 (2009).

In addition to the absence of territorial jurisdiction, this court also lacks monetary jurisdiction, as the counterclaim exceeds the monetary jurisdictional limit for Ohio Municipal Courts. R.C. § 1901.17. *Tru-Built Garage and Lumber Co., Inc. v. Mays* (2d Dist. App. 1993), 1993 WL 15664. The Counterclaim raised here exceeds this court's monetary jurisdiction under R.C. § 1901.17, as it seeks "in excess of $25,000." Counterclaim ¶138(a).

Hence, as this Court lacks territorial jurisdiction, the claims exceed the monetary jurisdiction of the court, this Court lacks subject matter jurisdiction over acts, practices or events alleged to have taken place beyond this court's territory, which are only vaguely alluded to in the counterclaim as

occurring somewhere "in this state." Counterclaim ¶¶26, 29, 32. *Hickey v. Hancock Wood Elec. Coop.* (6 Dist. App. 1993), 1993 WL 241731, 4. Because the claims against the "counter-defendants" are not within the jurisdiction of this court, the claims cannot be characterized as compulsory in these proceedings.

The only possible argument that this court has broader territorial jurisdiction arises under R.C. § 1345.04 which provides: "The courts of common pleas, and municipal or county courts within their respective monetary jurisdiction, have jurisdiction over any supplier with respect to any act or practice in this state covered by sections 1345.01 to 1345.13 of the Revised Code, or with respect to any claim arising from a consumer transaction subject to such section." This section makes this Court's jurisdiction over Defendant's CSPA counterclaims dependent on (a) the court's monetary jurisdiction; (b) the assertion of facts showing the claims are brought against a supplier and (c) the act or practice is covered by R.C. 1345.01 to 1345.13 or arises from a consumer transaction occurring in this state. None of these requirements are met here.

The Counterclaim contains no facts warranting the conclusion that the "counter-defendants" are suppliers. R.C. § 1345.01(C) provides that a supplier is "a seller, lessor, assignor, franchisor, or other person engaged in the business of effecting or soliciting consumer transactions, whether or not the person deals directly with the consumer." The counterclaim does not allege any facts that any of the counter defendants did any of these things. Rote assertions that the new parties are "suppliers," does not state a claim. *Ashcroft v. Iqbal,* __ U.S. __, 129 S.Ct. 1937, 1949-54, 173 L.Ed.2d 868, 2009 Westlaw 1361536, 12-15 (5-18-2009)(construing the requirements of Fed.R.Civ.P. Rule 8 and *Bell Atlantic Corp. v. Twombly,* 550 U.S. 544, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007))(" A pleading that offers "labels and conclusions" or "a formulaic recitation of the elements of a cause of action will not do." 550 U.S., at 555, 127 S.Ct. 1955. Nor does a complaint suffice if it tenders "naked assertion[s]" devoid of "further factual enhancement." Id., at 557, 127 S.Ct. 1955.).

The only slim reed left, is that counter-defendants are "person[s] engaged in the business of effecting or soliciting consumer transaction[.]" The plain meaning of the term "effecting" does not equate to a lawyer filing a lawsuit - as set forth in the American Heritage Dictionary, the term "effecting" connotes someone who plays a causal role in bringing about a particular result. Am. Heritage Dictionary, p. 415 (1973). "Effecting" a consumer transaction thus requires something to be brought into existence by virtue of the conduct of the "supplier." Because counter-defendants brought nothing into existence by virtue of the lawsuit filed against Defendant, and Plaintiff is an assignee of a transaction between a financial institution and a consumer, there can be no basis to argue that they are "suppliers." *Reagans v. MountainHigh Coachworks, Inc.*(2008), 117 Ohio St.3d 22, 30, 881 N.E.2d 245, 253, 2008 -Ohio- 271 ¶33. Further, "[t]he time for determining the existence of a consumer transaction is at the point a binding agreement is entered into and that 'objective manifestations of the parties, as set forth by the totality of the circumstances' determine the limits of a consumer transaction." *Jackson v. Krieger Ford, Inc.* (10th Dist. App. 1989),  1989 Westlaw 29351, *3 (quoting *Tomes v. George P. Ballas* (6th Dist. App. 1986), 1986 Westlaw 11420).  Where the parties have no agreement, it cannot be said that they have engaged in a consumer transaction. The filing of a lawsuit does not, in and of itself, constitute a consumer transaction. *Dawson v. Blockbuster, Inc.* (Ohio App. 8 Dist. 2006),  2006 WL 1061769, *3; *D.A.N. Joint Venture III, LP v. Legg* (Ohio App. 5 Dist. 2004), 2004 WL 1194065, *4; *SWA, Inc. v. Straka* (Ohio App. 8 Dist. 2003), 2003 WL 21434637, *2; *Fendrich v. F.I.F. Dev., Inc.* (9th Dist. App. 1991), 1991 WL 222005 *3; *Oliver v. Thomson Consumer Electronics, Inc.*(9th Dist. App. 1998),  1998 WL 887215, *2; *Cockrell v. Willett* (4th Dist. App. 1994),1994 WL 420916, *3.

And, the act or practice at issue here is not within the scope of the Ohio CSPA. R.C. § 1345.12 provides in pertinent part:

Further, sections 1345.01 to 1345.13 of the Revised Code do not apply to:

(A) An act or practice required or specifically permitted by or under federal law, or by or under other sections of the Revised Code, except as provided in division (B) of section 1345.11 of the Revised Code;

Filing a complaint in municipal court is expressly required and permitted by R.C. § 1901.22: "Civil actions and proceedings in the municipal court shall be commenced pursuant to the Civil Rules by filing a complaint upon which summons or writ shall be issued by the clerk of the municipal court. A form of summons or writ shall be prescribed by rule of court." R.C. § 1901.22. Similarly, the rules governing practices and procedures applicable in Ohio Courts are promulgated by the Ohio Supreme Court under Ohio Constitution Article IV, §5. To the extent Plaintiff urges that allegations in a state court complaint are subject to and are to be assessed under the Ohio CSPA, Plaintiff is in effect arguing for the procedural application of a substantive law, which is clearly in conflict with Article IV §5 of the Ohio Constitution. See e.g., *Kilbreath v. Rudy* (1968), 16 Ohio St.2d 70, 72, 242 N.E.2d 658, 660 ("Substantive law is that which creates duties, rights and obligations, while procedural or remedial law prescribes the methods of enforcement of rights or obtaining redress.").

Finally, the phrase "in this state" clearly indicates that the CSPA only applies to conduct that takes place within the territorial borders of Ohio. *Shorter v. Champion Home Builders Co.*, 776 F. Supp. 333 (N.D. Ohio 1991); *Chesnut v. Progressive Cas. Ins. Co.* (8th Dist.App. 2006), 166 Ohio App. 3d 299, 2006-Ohio-2080, 850 N.E.2d 751, appeal not allowed (2006), 111 Ohio St. 3d 1414, 2006-Ohio-5083, 854 N.E.2d 1093. Having failed to allege that either NCO Group, Inc.; NCO Financial Systems, Inc. engaged in any conduct in this state, there is no basis for exercising jurisdiction over either party.

As such, R.C. § 1345.04 provides no basis for this court's jurisdiction.

2. This Court does not have subject matter jurisdiction to provide equitable relief.

It is well-established that a municipal court does not have the authority to grant equitable relief in the form of declaratory or injunctive relief, except as delineated by R.C. § 1901.18(A)(3). *State ex rel. Foreman v. Bellefontaine Municipal Court* (1967), 12 Ohio St.2d 26; *Bowman v. Klingler* (3d Dist. App. 2000), 2000 WL 1722475, 2, 2000-Ohio-1798. *Dudkeiwicz v. United Mobile Homes* (3d Dist. App. 1995), 1995 WL 577817; *Johnson v. Middleton* (1989), 66 Ohio App.3d 783, 786. And that explicit circumstance is limited to providing equitable relief only where an action is based on contract, and the contract itself provides an equitable remedy.

Here, Defendant has not alleged that any such contract existed; hence there is no basis for entry of injunctive relief. In his demand for judgment, defendant asks the court to order Plaintiff and the third-party Defendants to establish certain procedures, to operate according to those procedures, to enjoin them from debt collection activities, and to "make declaratory judgments" as this Court deems proper. Because this Court lacks subject matter jurisdiction to issue such equitable relief against Plaintiff and the four impleaded parties, this Court should dismiss or strike the counterclaim as exceeding the bounds of this Court's jurisdiction. See also *Credit Acceptance Corp. v. Duncan* (5th Dist. App. 2006), 2006 WL 2141650; see also *Dudkeiwicz v. United Mobile* (3d Dist. App. 1995), 1995 WL 577817.

B.  Joinder of additional parties is improper & Lack of Jurisdiction over Persons

Assuming for the sake of argument that the claims here are more than an affirmative defense, a defendant can only add new parties in one of two ways. First, Defendant could file a counterclaim under Civ.R. 13 against the Plaintiff and under Rule 13(H), seek to bring in new parties; in such case, the new parties can only be joined in conformity with Rule 19, 19.1 and Rule 20. The second alternative, is to bring in third parties under Civ.R. 14. Each is discussed in turn.

A. Compulsory Counterclaims under Civ.R. 13 & jurisdictional impediment

It appears, from the reference in the caption of the Counterclaim to "Joinder of Additional Counter-Defendants," that Defendant's grand conspiracy theory here is that his claims are counterclaims to which he seeks to hold additional parties liable.  In pertinent part, Civ.R. 13(A) provides: "A pleading shall state as a counterclaim any claim which at the time of serving the pleading the pleader has against any opposing party, if it arises out of the transaction or occurrence that is the subject matter of the opposing party's claim and does not require for its adjudication the presence of third parties of whom the court cannot acquire jurisdiction."  The rule imposes five requirements for a counterclaim. See 1 Baldwin's Oh. Prac. Civ. Prac. § 13:11 (2009):

> Sentence one of Civ. R. 13(A) sets out three "positive" requirements for a compulsory counterclaim. Sentence two of Civ. R. 13(A) sets out two "negative" requirements for a compulsory counterclaim in the form of exceptions… to sentence one. Sentences one and two combined yield the following list of five requirements for a compulsory counterclaim:
>
> A counterclaim is compulsory if
> (1) it is a "claim which at the time of serving the pleading the pleader has against any opposing party";…
> (2) it "arises out of the transaction or occurrence that is the subject matter of the opposing party's claim";…
> (3) it "does not require for its adjudication the presence of third parties of whom the court cannot acquire jurisdiction";…
> (4) it is not the case that "at the time the action was commenced the claim was the subject of another pending action";… and
> (5) it is not the case that "the opposing party brought suit upon his claim by attachment or other process by which the court did not acquire jurisdiction to render a personal judgment on that claim, and the pleader is not stating any counterclaim under this Civ. R. 13.

Of these five requirements, two are not met here – first, this counterclaim "require[s] for its adjudication the presence of third parties of whom the court cannot acquire jurisdiction;" and second, the "claim[s here are] … the subject of another pending action."

1.   The presence of third parties of whom the court cannot acquire jurisdiction.

The third element, that the claim "does not require . . . the presence of third parties of whom the court cannot acquire jurisdiction," as discussed above, cannot be met here with the Defendant's counterclaims against Javitch, Block & Rathbone, LLP, NCO Group, Inc.; NCO

Financial Systems, Inc. To the extent Plaintiff alleges that they are debt collectors, debt collection in and of itself does not constitute doing business in the state of Ohio. R.C. § 1776.88.

> 2.  A at the time the action was commenced the claim was the subject of another pending action.

As to the fourth element, counsel for Defendant has made identical claims against Javitch, Block & Rathbone in a case originally filed in the Cuyahoga County Court of Common Pleas, and removed to federal court, and which remains pending there. See Affidavit of Slodov, Exhibit 1 (docket). In *Thacker v. Javitch, Block & Rathbone*, U.S. District Court Case No. 1:09-cv-01199, the Plaintiff alleged that a lawsuit filed against her by JB&R on behalf of a different creditor was likewise barred by the statute of limitations, giving rise to class and individual claims for violations of the FDCPA, CSPA, DTPA, abuse of process, defamation, fraud, and conspiracy. Affidavit of Slodov, Exhibit 2 (complaint).

> C. Joinder under Rules 13(H), 19, 19.1 & 20

The mechanism for bringing in third parties as new counterclaim defendants is set forth in Civ.R. 13(H), which provides: "Persons other than those made parties to the original action may be made parties to a counterclaim or cross-claim in accordance with the provisions of Rule 19, Rule 19.1, and Rule 20. Such persons shall be served pursuant to Rule 4 through Rule 4.6." Civ.R. 13(H). Thus, in order for the addition of "counter-defendants" to be proper, Defendant must meet the requirements of Rule 19, 19.1 and Rule 20.

> (1) Rule 19(A)

There are three grounds to join persons not parties to an action under Civ.R. 19(A), only one of which is remotely relevant to this action. In pertinent part, Civ.R. 19(A) provides, "A person who is subject to service of process shall be joined as a party in the action if (1) in his absence complete relief cannot be accorded among those already parties . . ." Thus, the first requirement imposed by this rule requires a determination of whether either of the three new "counter-defendants" is subject

to service of process; secondly, the rule requires the Court to asses whether complete relief can be accorded among the parties.  As set forth above, two of the counter-defendants sought to be added are not subject to the court's jurisdiction.

The second element is not satisfied as to any of the counter-defendants. Where liability against parties is joint and several, their joinder is not necessary. West 11th Street Limited Partnership v. City of Cleveland (8th Dist. App. 2001), 2001 WL 112121, 6. In other words, if Defendant could obtain complete relief against the Plaintiff, the counter-defendants are not necessary parties and their joinder is not required. Id. Here, Defendant could obtain complete relief against Plaintiff without joinder, because the liability sought to be imposed against the counter-defendants on all his claims are joint and several. Under the FDCPA and CSPA and common law, only one award of actual, punitive and/or statutory damages is available when the claims are based on the same operative facts, because the goal is to compensate the injured party, not to afford a windfall. Restatement (Second) of Torts §901, comment a (1979)("the law of torts attempts primarily to put an injured person in a position as nearly as possible equivalent to his position prior to the tort."); *State Farm Mut. Auto. Ins. Co. v. Campbell* (2003), 538 U.S. 408, 426, 123 S.Ct. 1513, 1525, 155 L.Ed.2d 585 (finding impermissible duplication in emotional distress award and punitive damage award); Lee v. Javitch, Block & Rathbone, LLP (S.D. Ohio 2008), 2008 WL 1886180, 1 (finding award under compensatory damages awarded under both CSPA and FDPA duplicative and vacating CSPA award); *Ferrari v. Howard,* 2002-Ohio-3539 (8th Dist. App. 2002), 2002 WL 1500414 ("Customer can receive only one award of damages, whether rescission or the statutory monetary damages, regardless of how many different violations occurred."); *Wright v. Litton Loan Servicing LP* (E.D.Pa. 2006), 2006 Westlaw 891030, at *4 (precluding a plaintiff from recovering actual damages multiple times under the RESPA, the FDCPA, and two other state statutes because it "would represent a duplication of recoveries"); *Dowling v. Litton Loan Servicing, LP* (S.D. Ohio 2006), 2006

12

WL 3498292, *14 (same); *Indu Craft, Inc. v. Bank of Baroda* (2d Cir.1995), 47 F.3d 490, 497("A plaintiff seeking compensation for the same injury under different legal theories is of course only entitled to one recovery."); *Mason v. Oklahoma Turnpike Authority* (10th Cir. 1997), 115 F.3d 1442; *Molecular Technology Corp. v. Valentine* (6th Cir. 1991), 925 F.2d 910; *Ting v. U.S.* (9th Cir. 1991), 927 F.2d 1504; *Eckman v. Columbia Oldsmobile, Inc.* (1st Dist. App. 1989), 65 Ohio App. 3d 719, 585 N.E.2d 451(" Multiple awards of statutory damages for the same injury under either OCSPA, ORISA or the Magnuson-Moss Warranty Act similarly cannot be justified in a civil action"); *Rosenfield v. Tombragel* (1st Dist. App. 1996), 1996 WL 741988 (" where multiple violations are alleged to have occurred within one consumer sales transaction, multiple awards of statutory damages cannot be sustained"); *Couto v. Gibson, Inc.*(4th Dist. App. 1992), 1992 WL 37800 (although plaintiff prayed for treble damages for each of 11 violations totalling $323,833.95, court held maximum recoverable was $200).

Under the FDCPA, an individual may obtain up to $1,000 per proceeding, no matter how many violations occurred. *Wright v. Finance Service of Norwalk, Inc.* (C.A.6 1994), 22 F.3d 647, 650. Liability against multiple defendants for the payment of such awards is joint and several. *Evanauskas v. Strumpf* (D. Conn. 2001), 2001 WL 777477, at *6 n. 6; *Dowling v. Kucker Kraus . & Bruh, LLP* (S.D.N.Y. 2005)., 2005 WL 1337442, 3. A class award is likewise limited to $500,000 or 1% of net worth, whichever is less, per class action. 15 U.S.C. §1692k(a)(2)(B). Finally, the core conduct complained of here (filing a lawsuit) was performed by JB&R on behalf of its client, NCO Portfolio Management, as its attorney. "Although … [federal courts] have recognized vicarious liability under the FDCPA,. . .there is no legal authority for the proposition that an attorney is generally liable for the actions of his client." *Clark v. Capital Credit & Collection Services, Inc.* (C.A. 9 2006), 460 F.3d 1162, 1173. To the extent courts have recognized vicarious liability as applied to FDCPA claims, vicarious liability results in liability of the principal for the conduct of the agent, not vice versa. Id.

Thus, the joinder of the counter-defendants to the counterclaim is not necessary to afford "complete relief ... among those already parties."

Where the counterclaims asserted cannot be brought against a party, Rule 19(B) comes into play. Malakpa v. Red Cab Co. (Lucas Co.  Com.Pl. 1995), 72 Ohio Misc.2d 27, 30, 655 N.E.2d 458, 460. Civ.R. 19(B) compels the court to determine:

> If a person as described in subdivision (A)(1), (2), or (3) hereof cannot be made a party, the court shall determine whether in equity and good conscience the action should proceed among the parties before it, or should be dismissed, the absent person being thus regarded as indispensable. The factors to be considered by the court include: first, to what extent a judgment rendered in the person's absence might be prejudicial to him or those already parties; second, the extent to which, by protective provisions in the judgment, by the shaping of relief, or other measures, the prejudice can be lessened or avoided; third, whether a judgment rendered in the person's absence will be adequate; fourth, whether the plaintiff will have an adequate remedy if the action is dismissed for nonjoinder.

Consideration of these factors shows that the Defendant's counterclaims should be limited to the Plaintiff and the Defendant or dismissed. *Malakpa v. Red Cab Co.*, 72 Ohio Misc.2d 27, 31. The inquiry under this section is intended to address whether the party who is beyond the court's jurisdiction is an "indispensable party" to the case. See *Chambers v. Stevenson* (1991), 71 Ohio App.3d 566, 594 N.E.2d 1097. An "indispensable party" has been defined as "one whose absence seriously prejudices any party to the action or prevents the court from rendering an effective judgment between the parties, or is one whose interests would be adversely affected or jeopardized by the judgment between the parties to the action." *Layne v. Huffman* (1974), 43 Ohio App.2d 53, 59, 333 N.E.2d 147, 151.

As set forth above, Defendant would not be prejudiced in the absence of joinder of the additional counter-defendants, as he can obtain complete relief in the form of damages against the Plaintiff. The interests of the additional counter-defendants would be adequately protected by proceedings limited to the Plaintiff and the Defendant, as they are aligned in interest and in privity with the Plaintiff and would be bound by a judgment rendered in their absence.  As such, service on

14

the counter-defendants ought to be quashed and the action should proceed between the Plaintiff and Defendant.

### D. Rule 19.1

As succinctly stated in the 1970 Staff notes, Rule 19.1 is inapplicable to the facts of this case:

> Rule 19.1(A) spells out the four situations where joinder will be required. The first situation (Rule 19.1(A)(1)) occurs when there is an accident causing injury to a person who later dies as a result of the injuries sustained in the wrongful act. …
>
> The second situation (Rule 19.1(A)(2)) where joinder is required occurs when there is a wrongful act which causes personal injury or property damage to a husband or wife and gives the uninjured spouse a claim for loss of services, expenses or property damages. …
>
> The third situation (Rule 19.1(A)(3)) where joinder is required is the situation in which a minor receives personal injury or property damage and as a result of the same wrongful act, the parent or guardian has a claim for loss of services, expenses or property damage. …
>
> The fourth situation (Rule 19.1(A)(4)) requiring joinder involves personal injury or property damage to an employee or agent where the employer or principal has a related claim for property damage caused by the same wrongful act. …
>
> Rule 19.1(A) requires the plaintiff to join the persons whose claims or interests are enumerated in Rule 19(A)(1) through Rule 19(A)(4) if they are subject to service of process. If one of the persons is not amenable to process issued from an Ohio court, joinder of that person is not required. …

1970 Staff Notes to Civ.R. 19.1.   In that none of these circumstances remotely apply, joinder under Rule 19.1 would be improper.

### E. Rule 20 – Permissive Joinder

In pertinent part, Civ.R. 20 provides:

> "All persons may be joined in one action as defendants if there is asserted against them jointly, severally, or in the alternative, any right to relief in respect of or arising out of the same transaction, occurrence, or succession or series of transactions or occurrences and if any question of law or fact common to all defendants will arise in the action. A plaintiff or defendant need not be interested in obtaining or defending against all the relief demanded. Judgment may be given for one or more of the plaintiffs according to their respective rights to relief, and against one or more defendants according to their respective liabilities."

While permissive joinder might be used to bring in a non-party in a case like this, where the non-party is not subject to the personal or subject matter jurisdiction of a court, permissive joinder is likewise unavailable as a means of bringing a party in. See *Crenshaw v. Checchia*(E.D. Pa. 1987), 668

15

F.Supp. 443, 445 ; Executone of Columbus, Inc. v. Inter-Tel, Inc. (S.D. Ohio 2006), 2006 WL 3043115, *6.

F. Third Party Practice under Rule 14

None of the additional counter-defendant parties are alleged to be liable to the Defendant "for all or part of the Plaintiff's claim against him." Civ.R. 14(A). "It is elementary that a counterclaim may only be asserted against an opposing party." *Quintas v. McClure* (1987) 41 Ohio App.3d 402, 404, 536 N.E.2d 22;  *Hampton v. Ahmed* (7th Dist. App. 2005),  2005 WL 589921, 3; *Benjamin v. Ernst & Young, L.L.P.* (10th Dist. App. 2006), 855 N.E.2d 128, 132, 167 Ohio App.3d 350, 355, 2006-Ohio-2739, 2739. When a defendant has a claim against a non-party, the defendant may bring in the non-party under third party practice under Rule 14, or in a proper case, under joinder rules. Here, the claims asserted here are not proper third party claims or properly raised under joinder rules.

In pertinent part Civ.R. 14(A) provides that "[a]t any time after commencement of the action a defending party, as a third-party plaintiff, may cause a summons and complaint to be served upon a person not a party to the action who is or may be liable to him for all or part of the plaintiff's claim against him." Civ.R. 14(A).  In order to bring a third-party claim under Civ.R. 14(A), the claim must be derivative of the outcome of the main claim, and the third-party defendant must be "secondarily liable" or "liable over." *Spalding v. Coulson* (8th Dist. App. 2001), 147 Ohio App.3d 371, 379, 770 N.E.2d 1060, 1066 – 1067, 2001 -Ohio- 4350; *Renacci v. Martell* (9th Dist. App. 1993), 91 Ohio App.3d 217, 220, 632 N.E.2d 536. A third-party claim is inappropriate where the right or duty set forth in the third-party complaint alleged to have been violated does not emanate from the plaintiff's claim but exists wholly independent of it. Id. Thus, "[i]n order to be the proper subject of a third-party action, the alleged right of the defendant to recover, or the duty allegedly breached by the third-party defendant, must arise from the plaintiff's successful prosecution of the main action

against defendant." Id. at 221, 632 N.E.2d at 538. Civ.R. 14(A) does not allow a third-party complaint to be founded on a defendant's independent cause against a third-party defendant, even though arising out of the same occurrence underlying plaintiff's claim. *State Farm Mut. Ins. Co. v. Charlton* (1974), 41 Ohio App.2d 107, 322 N.E.2d 333. Impleader under Civ.R. 14(A) cannot be used to combine all claims tangentially related to one another. *Renacci*, supra.

In *State ex rel. Jacobs v. Municipal Court* (1972), 30 Ohio St.2d 239, in commenting upon Civ.R. 14(A), the Court stated at page 242, 284 N.E.2d 584 at page 586:

> 'This language presupposes that the liability sought to be 'passed on' by the third-party claim arose out of the transaction or occurrence which is the subject matter of the primary claim. The transaction or occurrence which forms the subject matter of the primary claim must be the same transaction or occurrence that gives rise to legal rights in the defendant against the third-party defendant. If the claim asserted in the third-party complaint does not arise because of the primary claim, or is in some way derivative of it, then such claim is not properly asserted in a third party complaint. * * * ' (Emphasis added.).

Since the claims raised by the Defendant are not derivative of Defendant's liability on Plaintiff's complaint, the claims cannot be construed as proper third party claims under third party practice.

G. Failure to State a Claim

Defendant's claims for fraud, abuse of process, defamation and civil conspiracy are barred as a matter of law, as they are premised upon statements made in the course of a judicial proceeding - all of which are absolutely privileged under Ohio common law.  As a general rule, an attorney owes no duty to third persons arising from his performance as an attorney unless such third person is in privity with the client or the attorney acts maliciously. *Scholler v. Scholler* (1984), 10 Ohio St.3d 98, 103, 462 N.E.2d 158, 163; *Simon v. Zipperstein* (1987), 32 Ohio St.3d 74, 512 N.E.2d 636; *LeRoy v. Allen, Yurasek & Merklin* (2007),  114 Ohio St.3d 323, 324, 872 N.E.2d 254, 256.  Ohio adheres to the minority view that a party must show she meets the strict privity requirement to give rise to a duty on the part of an attorney owed to a third person, in the absence of an attorney client relationship. *Shoemaker v. Gindlesberger* (2008),  118 Ohio St.3d 226, 229-230, 887 N.E.2d 1167, 1171.

Parties occupying a debtor-creditor relationship and adversaries in litigation are not in privity. Restatement (Third) of Law Governing Lawyers §51, Duty Of Care To Certain Nonclients (2000), Comment C. See also *Strauch v Gross* (10th Dist. App. 1983), 10 Ohio App 3d 303, 303-04, 462 NE2d 433. Here, Defendant does not allege he was JB&R's client, or that he was in privity with its client. As an adversary in litigation, JB&R owed her no duty of disclosure and JB&R owed him no duty. *Shoemaker v. Gindlesberger*, 118 Ohio St. 3d 226, 229-230; *McGuire v. Draper, Hollenbaugh and Briscoe Co., L.P.A.* (4th Dist. App. 2002), 2002 Westlaw 31521750, *10; *Hile v. Firmin, Sprague & Huffman* (1991), 71 Ohio App.3d 838, 595 N.E.2d 1023; Sayyah v. Cutrell (2001), 143 Ohio App.3d 102, 111-12, 757 N.E.2d 779.

> As the Court in *NorthPoint Properties, Inc. v. Petticord*, recently recognized:
>
> Statements made by an attorney that are reasonably related to a judicial proceeding cannot serve as the basis of a tort claim. *Willis & Linnen*, 163 Ohio App.3d 400, 2005-Ohio-4934. . . . Also, a heightened standard of pleading is required when a plaintiff brings a claim for fraud. Civ.R. 9(B) states that "[i]n all averments of fraud or mistake, the circumstances constituting fraud or mistake shall be stated with particularity."
>
> {¶ 25} In this case, we find that the allegations in the complaint involved statements made by appellees in connection with judicial proceedings that were reasonably related to litigation and cannot be used to support tort claims against the attorneys. In addition, we find that appellants' allegations are legal conclusions framed as factual allegations, and their fraud claims were not pled with particularity.

2008 Westlaw 4949840, 4 (8th Dist. App. 2008). Whether a statement should be accorded absolute privilege is a question of law for the court. *Fallang v. Cormier* (12th Dist. App. 1989), 63 Ohio App.3d 450, 452; *Liles v. Gaster* (1885), 42 Ohio St. 631, 637. Under clearly established law, Defendant's defamation claim, as well has his common law claims based on the content of the state court complaint, are barred as a matter of law. *Kafele v. Lerner, Sampson & Rothfuss, L.P.A.* (6th Cir. 2005), 161 Fed.Appx. 487, 491, 2005 Westlaw 3528921, 3.

In Ohio, the rule of absolute privilege barred defamation actions founded upon statements made in a pleading or judicial proceeding, even where the statement is untrue, where the statement

bears some reasonable relation to the judicial proceeding in which it appears. *Hecht v. Levin* (1993), 66 Ohio St.3d 458, 460; *Fallang*, 63 Ohio App.3d at 452; *Surace v. Wuliger* (1986), 25 Ohio St.3d 229, 233; *Pease Company v. Huntington Nat'l Bank* (1985), 24 Ohio App.3d 227, 232; *Taplin-Clerkin Co. v. Hower* (1931), 124 Ohio St. 123; *Erie County Farmers' Ins. Co. v. Crecelius* (1930), 122 Ohio St. 210; *Liles v. Gaster*, 42 Ohio St. 631. This absolute privilege regarding testimony or statements made in judicial proceedings is founded upon sound public policy considerations:

> Although the result may be harsh in some instances and a party to a lawsuit may possibly be harmed without legal recourse, on balance, a liberal rule of absolute immunity is the better policy, as it prevents endless lawsuits because of alleged defamatory statements in prior proceedings.

*Justice v. Mowery* (10th Dist. App. 1980), 69 Ohio App.2d 75, 77. The privilege applies to statements made in a written pleading or brief, and in an oral statement to a judge or jury in open court. *Michaels v. Berliner* (9th Dist. App. 1997), 119 Ohio App.3d 82, 87.  See *Nozik v. Sanson* (8th Dist. App. 1995), 104 Ohio App.3d 671 (statement in pleadings); *Simmons v. Climaco* (8th Dist. App. 1986), 30 Ohio App.3d 225 (8th Dist. App. 1986) (statements in letters); *Pease Co. v. Huntington Nat. Bank* (10th Dist. App. 1985), 495 N.E.2d 45, 24 Ohio App.3d 227 (allegations in complaint); *Yoder v. Cole* (Pa. 1911), 232 Pa. 509, 81 A. 546 (answers to interrogatories).

Ohio courts have applied the rationale underlying the absolute privilege to bar tort suits other than defamation, predicated upon allegedly false testimony made in prior proceedings.  For example, in *Willis & Linnen Co., L.P.A. v. Linnen* (9th Dist. App. 2005), 163 Ohio App.3d 400. the Ohio Ninth District Court of Appeals found that the rationale underlying the absolute privilege doctrine precludes the use of statements made in a prior judicial proceeding to support subsequent tort claims.  Similarly, civil liability is not recognized for perjury, an intentional misrepresentation made during litigation by either a party or a witness. See *Reasoner v. State Farm Mutual Automobile Ins. Co.* (10th Dist. App. 2002), 2002 Westlaw 338133 *4; *Costell v. Toledo Hospital* (1988), 38 Ohio St.3d 221, 223-224. See also *Bennett v. Jones, Waldo, Holbrook & McDonough* (Utah 2003), 70 P.3d 17;

*Janklow v. Keller* (S.D. 1976), 90 S.D. 322, 332-334. See also *Yang v. Lee* (D.Md. 2001), 163 F.Supp.2d 554, 564 (litigation privilege expanded to include variety of tort claims, including intentional infliction of emotional distress); *Bio/Basics Int'l Corp. v. Ortho Pharmaceutical Corp.*, 545 F.Supp. 1106, 1115 (S.D.N.Y. 1982)(testifying witness entitled to absolute immunity from subsequent claims of tortious interference with contract, tortious interference with pre-contractual relations, and breach of fiduciary relationship predicated upon the testimony).

Here, Defendant's claims are predicated upon allegations or statements made in a lawsuit, which are absolutely privileged, thereby barring his common law claims. Even if the statements were false, which JB&R emphatically denies, it is well established that claims predicated upon such a statement during a prior judicial proceeding are absolutely privileged. As such, Defendant's claims for fraud, abuse of process, defamation and civil conspiracy fails to state a claim upon which relief may be granted and must be dismissed.

A. Plaintiff lacks standing under the Ohio Deceptive Trade Practices Act.

The Ohio Legislature passed the Ohio Deceptive Trade Practices Act in order to protect the buying public from possible confusion as to the source or origin of goods, and generally regulates trademarks, unfair competition, and false advertising. *Yocono's Restaurant, Inc. v. Yocono* (1994), 100 Ohio App.3d 11, 17, 651 N.E.2d 1347; *OmniAmerica Group v. Street Gold Records, Ltd.* (N.D. Ohio 1996), 916 F.Supp. 672. Filing a lawsuit against a debtor for an unpaid debt is none of these. R.C. § 4165.02(A). "Where claims are made under the Ohio common law and [R.C. Chapter 4165] the deceptive trade practices statutes, [Ohio] courts are to apply essentially the same analysis as that applied in assessing [the law of] unfair competition under the federal statutes ." *Cesare v. Work* (1987), 36 Ohio App.3d 26, 520 N.E.2d 586, syllabus ¶1; *Chandler & Assoc. v. America's Healthcare Alliance* (1997), 125 Ohio App.3d 572, 579, 709 N.E.2d 190.

20

The DTPA deals with misrepresentations regarding corporate affiliations in the sale of goods or services, and does not pertain to other types of misrepresentation claims. *Bergmoser v. Smart Document Solutions, LLC* (6th Cir. 2008), 268 Fed.Appx. 392, 396, 2008 Westlaw 624848, 3. In the absence of an allegation that the counter defendants engaged in any advertisement, Defendant's complaint fails to state a claim for a violation of the Ohio DTPA. *Arlington Video Productions, Inc. v. Fifth Third Bancorp* (S.D. Ohio 2008), 2008 Westlaw 1990355, *2.

One Ohio Court agreed with the above analysis, and held that where a plaintiff is not a "commercial entity," she has no standing to pursue a claim under the Ohio Deceptive Trade Practices Act. *Dawson v. Blockbuster, Inc.* (8th Dist. App. 2006), 2006 Westlaw 1061769 *4; see also *Kal Kan Foods, Inc. v. Iams Co.* (S.D. Ohio, 2002), 197 F.Supp.2d 1061, 1070 ("a plaintiff may satisfy the "injury in fact" and causation standing requirements by alleging that the false advertising of defendant's product is likely to cause the plaintiff to suffer a loss in sales.").

Because Defendant is not a commercial entity, suffered no loss in sales or alleges that Plaintiff or counter Defendants engaged in advertising or competition with her, but instead alleges that she is a consumer, she lacks standing to bring a claim under R.C. § 4165.01, *et seq.*

B. Abuse of process

Defendant's abuse of process claim does not allege that counter defendants engaged in an act that this court was powerless to order, as Ohio municipal courts have the authority to adjudicate a consumers liability for a debt, to enter judgment against a consumer, and to order the judgment debtor to pay. Because this is a necessary element of an abuse of process claim, Defendant's counter claim fails to state a claim and should be dismissed.

An abuse of process claim under Ohio law consists of three components: "(1) that a legal proceeding has been set in motion in proper form and with probable cause; (2) that the proceeding has been perverted to attempt to accomplish an ulterior purpose for which it was not designed; and

(3) that direct damage has resulted from the wrongful use of process." *Yaklevich v. Kemp, Schaeffer & Rowe Co., L.P.A.*, 68 Ohio St.3d 294, 298, 1994-Ohio-503, 626 N.E.2d 115. There is no liability "where the defendant has done nothing more than carry out the process to its authorized conclusion, even though with bad intentions." *Id.* at 298, fn. 2, 626 N.E.2d 115. "[A]buse of process occurs where someone attempts to achieve through use of the court that which the court is itself powerless to order." *Robb v. Chagrin Lagoons Yacht Club, Inc.,* 75 Ohio St.3d 264, 271, 1996-Ohio-189, 662 N.E.2d 9.

There is nothing in the complaint to suggest that counter Defendants sought to achieve something that the state court was powerless to order. Rather, Plaintiff filed a complaint seeking to recover a monetary award from the Defendant along with court costs and statutory interest. Although the Defendant might have a defense to the claims, the court had the power to order Defendant to pay a monetary award, inclusive of costs and interest as provided by Ohio law, and the fact of the suit's filing and a civil judgment can lawfully be reported by credit reporting agencies. Ohio Const. Art. IV, §5(B)(vesting Ohio Supreme Court with exclusive authority to regulate procedure in Ohio Courts); Ohio Civ.R. 1 (application & scope of Civil Rules); Civ. R. 54(D)(costs awarded to prevailing party); R.C. Chapter 19 (municipal courts); R.C. §1343.03(A)(" …when money becomes due and payable upon … all judgments, …of any judicial tribunal for the payment of money arising out of … a contract or other transaction, the creditor is entitled to interest …."); R.C. § 2335.18 (providing for taxation of costs); 15 U.S.C. § 1681c(a)(2)(authorizing consumer reporting agencies to include civil suits and civil judgments in consumer reports, for not longer than seven years).

The allegations in the Defendant's counterclaim do not warrant a conclusion that Plaintiff had bad intentions in filing the lawsuit against him, and Defendant certainly did not allege any facts

from which reasonable minds could conclude that Plaintiff or counter Defendants sought to achieve an ulterior purpose for which the lawsuit was not designed.

## III.  Conclusion

For all the foregoing reasons, the Court should quash service of process, dismiss, strike or sever Defendant's "Counterclaim with Joinder of Additional Counter-defendants."

Respectfully Submitted:

Michael D. Slodov, SCR #0051678
Javitch, Block, & Rathbone LLP
1100 Superior Ave., 19th Floor
Cleveland, Ohio 44114
Ph:      (216) 623-0000 ex. 3057
Fax:     (216) 685-3038
E-mail: mslodov@jbandr.com

STATE OF OHIO          )
                                )   SS.              A F F I D A V I T
COUNTY OF CUYAHOGA   )

        Now comes Michael D. Slodov, Affiant, who being first duly sworn, according to law, deposes and states as follows:

1. I am an attorney licensed to practice law in the state of Ohio, and am presently in good standing with the Ohio Supreme Court.

2. I am one of the attorneys representing Javitch, Block and Rathbone, LLP (JB&R), in the matter of Thacker v. Javitch, Block & Rathbone, LLP, et al., U.S. District Court Case No. 1:09-cv-01199.

3. Attached hereto as Exhibit 1 is a true, authentic and accurate copy of the docket in the aforementioned case, printed on July 20, 2009, from the court's ECF docket, online at https://ecf.ohnd.uscourts.gov/cgi-bin/login.pl

4. Attached hereto as Exhibit 2 is a true, authentic and accurate copy of the notice of removal and the complaint in the aforementioned case, filed electronically on May 26, 2009, available online at https://ecf.ohnd.uscourts.gov/cgi-bin/login.pl.

FURTHER AFFIANT SAYETH NAUGHT.

                                     _____
                                     Michael D. Slodov, SCR #0051678

SWORN TO BEFORE ME AND subscribed in my presence this 24 day of _____, 2009.

                                     _____
                                     Notary Public

MARTA E. DELLOVA, Notary Public
State of Ohio & Cuyahoga County
My Commission Expires on 1-1-2014

1

Cat12

# U.S. District Court
## Northern District of Ohio (Cleveland)
### CIVIL DOCKET FOR CASE #: 1:09-cv-01199-CAB



Thacker v. Javitch , Block & Rathbone LLP et al          Date Filed: 05/26/2009
Assigned to: Judge Christopher A. Boyko                   Jury Demand: Plaintiff
Case in other court: Cuyahoga Court of Commonn Pleas, CV 09   Nature of Suit: 480 Consumer Credit
      690960                 Jurisdiction: Federal Question
Cause: 15:1692 Fair Debt Collection Act

**Plaintiff**

**Eleanor H Thacker**                    represented by   **Anand N. Misra**
                      Ste. 100
                      3659 Green Road
                      Beachwood , OH 44122
                      216-752-3330
                      Fax: 216-752-3358
                      Email: misraan@misralaw.com
                      *LEAD ATTORNEY*
                      *ATTORNEY TO BE NOTICED*

                      **Robert S. Belovich**
                      5638 Ridge Road
                      Parma , OH 44129
                      440-884-8018
                      Fax: 440-884-8021
                      Email: rsb@belovichlaw.com
                      *LEAD ATTORNEY*
                      *ATTORNEY TO BE NOTICED*

V.

**Defendant**

**Javitch , Block & Rathbone LLP**      represented by   **Michael D. Slodov**
                      Javitch, Block & Rathbone - Cleveland
                      19th Floor
                      1100 Superior Avenue
                      Cleveland , OH 44114
                      216-623-0000 ext. 3057
                      Fax: 216-685-3038
                      Email: mslodov@JBandR.com
                      *ATTORNEY TO BE NOTICED*

                      **Robert G. Knirsch**

Javitch, Block & Rathbone - Cleveland
19th Floor
1100 Superior Avenue
Cleveland , OH 44114
216-623-0000 x 3088
Fax: 216-525-4962
Email: gknirsch@jbandr.com
*ATTORNEY TO BE NOTICED*

**Defendant**

**Portfolio Recovery Associates, LLC**          represented by  **George S. Coakley**
Reminger & Reminger
1400 Midland Bldg.
101 Prospect Avenue, W
Cleveland , OH 44115-1093
216-430-2160
Fax: 216-687-1898
Email: gcoakley@reminger.com
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Holly M. Wilson**
Reminger & Reminger - Cleveland
1400 Midland Bldg.
101 Prospect Avenue, W
Cleveland , OH 44115
216-687-1311
Fax: 216-687-1841
Email: hwilson@reminger.com
*ATTORNEY TO BE NOTICED*

**Defendant**

**Portfolio Recovery Associates, Inc.**          represented by  **George S. Coakley**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Holly M. Wilson**
(See above for address)
*ATTORNEY TO BE NOTICED*

| Date Filed | # | Docket Text |
|---|---|---|
| 05/26/2009 | 1 | **Notice of Removal** from Cuyahoga County Court of Common Pleas, case number CV 09 690960 with jury demand. Filing fee $ 350, receipt number 06470000000003572629, filed by Javitch, Block & Rathbone LLP. (Attachments: # 1 Exhibit A: State Court Complaint, # 2 Exhibit B: Consent to Removal) (Knirsch, Robert) (Entered: 05/26/2009) |

| 05/26/2009 | 2 | Notice *of filing Civil Cover Sheet* filed by Javitch, Block & Rathbone LLP. (Attachments: # 1 Exhibit Civil Cover Sheet)Related document(s) 1 .(Knirsch, Robert) (Entered: 05/26/2009) |
| 05/26/2009 | 3 | Corporate Disclosure Statement by Javitch, Block & Rathbone LLP filed by Javitch, Block & Rathbone LLP. (Knirsch, Robert) (Entered: 05/26/2009) |
| 05/26/2009 | 4 | **Motion** for leave *to Exceed Page Limit in Support of Motion to Dismiss Instanter* filed by Defendant Javitch, Block & Rathbone LLP. (Slodov, Michael) (Entered: 05/26/2009) |
| 05/26/2009 | 5 | **Motion** to dismiss for lack of jurisdiction (), **Motion** to dismiss *for failure to state a claim* () filed by Defendant Javitch, Block & Rathbone LLP. Related document(s) 1 , 4 . (Attachments: # 1 Brief in Support, # 2 Exhibit 1 state court record-certified copy pt 1, # 3 Exhibit 1 -state court record-certified copy pt 2, # 4 Exhibit 2 --trial court docket, # 5 Exhibit 3 -appellate court docket, # 6 Affidavit Exhibit 4 rathbone declaration.pdf) (Slodov, Michael) (Entered: 05/26/2009) |
| 05/26/2009 | | Judge Christopher A. Boyko assigned to case. (C,B) (Entered: 05/26/2009) |
| 05/26/2009 | | Random Assignment of Magistrate Judge pursuant to Local Rule 3.1. In the event of a referral, case will be assigned to Magistrate Judge Gallas. (C,B) (Entered: 05/26/2009) |
| 05/26/2009 | | Magistrate Consent form issued to counsel. (C,B) (Entered: 05/26/2009) |
| 05/27/2009 | | **Order** [non-document] granting Defendant's Motion for leave to Exceed Page Limit. Motion shall be refiled on or before 5/29/09 (Related Doc # 4 ); striking Motion to Dismiss for Lack of Jurisdiction and Failure to State a Claim. Motion is stricken because it was filed before leave to exceed page limitation was granted (Related Doc # 5 ); (Related Doc # 5 ). Judge Christopher A. Boyko on 05/27/09.(M,M) (Entered: 05/27/2009) |
| 05/27/2009 | 6 | **Motion** to dismiss for lack of jurisdiction (), **Motion** to dismiss *for failure to state a claim* () filed by Defendant Javitch, Block & Rathbone LLP. Related document(s) 1 ,. (Attachments: # 1 Brief in Support, # 2 Exhibit 1 state court record-certified copy pt 1, # 3 Exhibit 1 -state court record-certified copy pt 2, # 4 Exhibit 2 --trial court docket, # 5 Exhibit 3 -appellate court docket, # 6 Affidavit Exhibit 4 rathbone declaration) (Slodov, Michael) (Entered: 05/27/2009) |
| 06/02/2009 | 7 | **Motion** for extension of time until June 17, 2009 to answer *Plaintiff's Complaint* filed by Portfolio Recovery Associates, LLC, Portfolio Recovery Associates, Inc.. (Wilson, Holly) (Entered: 06/02/2009) |
| 06/02/2009 | | **Order** [non-document]granting 7 Motion for Extension of Time to Answer Portfolio Recovery Associates, LLC and Portfolio Recovery Associates, Inc. answer due 6/17/2009.. Judge Christopher A. Boyko on 6/2/2009.(R,D) (Entered: 06/02/2009) |
| 06/09/2009 | 8 | **Case Management Conference Scheduling Order** with case management conference to be held on 7/9/2009 at 03:00 PM at Chambers 15B before Judge Christopher A. Boyko. Judge Christopher A. Boyko on 06/09/09. (Attachments: # 1 Report of Parties Planning Meeting)(M,M) (Entered: 06/09/2009) |
| 06/15/2009 | 9 | **Motion** to continue *CMC* filed by Defendant Javitch, Block & Rathbone LLP. Related document(s) 8 . (Slodov, Michael) (Entered: 06/15/2009) |

https://ecf.ohnd.uscourts.gov/cgi-bin/DktRpt.pl?120280738924912-L_80...

| 06/15/2009 | 10 | **Response** to 9 **Motion** to continue *CMC* filed by Eleanor H Thacker. (Misra, Anand) (Entered: 06/15/2009) |
|------------|----|---|
| 06/16/2009 | | **Order** [non-document] denying Defendant Javitch, Block & Rathbone's Motion to continue the July 9, 2009 Case Management Conference (Related Doc # 9 ). Judge Christopher A. Boyko on 06/16/09.(M,M) (Entered: 06/16/2009) |
| 06/17/2009 | 11 | Corporate Disclosure Statement by Portfolio Recovery Associates, LLC identifying Corporate Parent Portfolio Recovery Associates, Inc. for Portfolio Recovery Associates, LLC. filed by Portfolio Recovery Associates, LLC. (Wilson, Holly) (Entered: 06/17/2009) |
| 06/17/2009 | 12 | Corporate Disclosure Statement by Portfolio Recovery Associates, Inc. filed by Portfolio Recovery Associates, Inc.. (Wilson, Holly) (Entered: 06/17/2009) |
| 06/17/2009 | 13 | **Motion** for joinder *(limited)* filed by Portfolio Recovery Associates, LLC, Portfolio Recovery Associates, Inc.. Related document(s) 5 . (Wilson, Holly) (Entered: 06/17/2009) |
| 06/17/2009 | 14 | **Motion** for leave *and Combined Response to Defendants' Motions to Dismiss* filed by Plaintiff Eleanor H Thacker. (Misra, Anand) (Entered: 06/17/2009) |
| 06/17/2009 | 15 | **Motion** for leave *to exceed the page limit* filed by Plaintiff Eleanor H Thacker. Related document(s) 6 . (Misra, Anand) (Entered: 06/17/2009) |
| 06/18/2009 | | **Order** [non-document] granting Plaintiff's Motion for leave to Exceed the Page Limit for its Memorandum in Opposition to Defendant's Motion to Dismiss (Related Doc # 15 ). Judge Christopher A. Boyko on 06/18/09.(M,M) (Entered: 06/18/2009) |
| 06/19/2009 | 16 | **Opposition** to 14 **Motion** for leave *and Combined Response to Defendants' Motions to Dismiss* filed by Javitch, Block & Rathbone LLP. (Slodov, Michael) (Entered: 06/19/2009) |
| 06/19/2009 | 17 | **Reply** to response to 14 **Motion** for leave *and Combined Response to Defendants' Motions to Dismiss* filed by Eleanor H Thacker. (Misra, Anand) (Entered: 06/19/2009) |
| 06/22/2009 | | **Order** [non-document] granting Plaintiff's Motion for Leave to File Combined Brief by July 7, 2009 at 12:00 noon. Case Management Conference remains scheduled for July 9, 2009 at 3:00 p.m. (Related Doc # 14 ). Judge Christopher A. Boyko on 06/22/09.(M,M) (Entered: 06/22/2009) |
| 06/22/2009 | 18 | Report of Parties' Planning Meeting. Parties do not consent to this case being assigned to the magistrate judge, filed by all parties. (Misra, Anand) (Entered: 06/22/2009) |
| 06/24/2009 | 19 | **Motion** to attend *Case Management Conference* by telephone filed by Portfolio Recovery Associates, LLC, Portfolio Recovery Associates, Inc.. (Wilson, Holly) (Entered: 06/24/2009) |
| 06/25/2009 | | **Order** [non-document] granting Defendant's Motion to Excuse Personal Attendance of Client at Case Management Conference and allowing client to participate by phone (Related Doc # 19 ). Judge Christopher A. Boyko on 06/25/09.(M,M) (Entered: 06/25/2009) |
| 07/07/2009 | 20 | **Opposition** to 6 **Motion** to dismiss for lack of jurisdiction **Motion** to dismiss *for failure to state a claim,* 13 **Motion** for joinder *(limited)* filed by Eleanor H Thacker. (Misra, Anand) (Entered: 07/07/2009) |

| 07/10/2009 | | Minutes of proceedings [non document] before Judge Christopher A. Boyko. Case Management Conference held on 07/09/09. Discussed facts of case and propriety of proceeding while related underlying state court matter is pending. No Case Management Scheduled entered at this time. Parties shall file cross-briefs, not to exceed ten (10) pages, as to whether this action should be stayed and removed from the active docket pending decision of Clark County Court of Appeals. Cross-briefs are due 7/20/09. Further briefing on pending motions to dismiss are tolled until ruling is made. (Court Reporter: None.)Time: 45 minutes. (M,M) (Entered: 07/10/2009) |
| --- | --- | --- |
| 07/11/2009 | 21 | Motion to stay filed by Defendant Javitch, Block & Rathbone LLP. (Slodov, Michael) (Entered: 07/11/2009) |
| 07/17/2009 | 22 | Motion for joinder *to Defendant Javitch Block & Rathbone's Memorandum Regarding Stay of Proceedings* filed by Portfolio Recovery Associates, LLC, Portfolio Recovery Associates, Inc.. Related document(s) 21 . (Wilson, Holly) (Entered: 07/17/2009) |

| PACER Service Center | | |
| --- | --- | --- |
| Transaction Receipt | | |
| 07/20/2009 06:55:14 | | |
| PACER Login: | jb3574 | Client Code: | |
| Description: | Docket Report | Search Criteria: | 1:09-cv-01199-CAB |
| Billable Pages: | 4 | Cost: | 0.32 |

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | |
|---|---|
| Eleanor H. Thacker, | CASE NO.: 1:09 – CV - 1199 |
| Plaintiff, | JUDGE: |
| vs. | |
| Javitch, Block, & Rathbone, L.L.P., | |
| and, | |
| Portfolio Recovery Associates, LLC, | |
| and, | |
| Portfolio Recovery Associates, Inc., | |
| Defendants. | |

EXHIBIT
2

## NOTICE OF REMOVAL

To the honorable judges of the United States District Court for the Northern District of Ohio, Eastern Division:

Removing party Javitch, Block, & Rathbone, with the consent of Portfolio Recovery Associates, LLC, and Portfolio Recovery Associates, Inc., by and through the undersigned attorney, respectfully shows this Court:

1. On April 24, 2009, the above-entitled action was commenced by Plaintiff Eleanor Thacker against the defendants in the Cuyahoga County Court of Common Pleas in Cuyahoga County, Ohio, and is now pending therein.

2. On or about May 1, 2009, removing party Javitch, Block, & Rathbone was served with a summons and complaint at 1100 Superior Avenue, Cleveland, OH, 44114, by certified mail.

3. On or about May 7, 2009, consenting party Portfolio Recovery Associates, LLC was served with a summons and complaint at Norfolk, Virginia, by certified mail.

4. On or about May 4, 2009, consenting party Portfolio Recovery Associates, Inc. was served with a summons and complaint at Norfolk, Virginia, by certified mail.

5. Plaintiff's complaint purports to set forth a class action and individual cause of action on ten counts, including two under the Fair Debt Collection Practices Act, 15 U.S.C. §1692a et seq., as well as state law claims arising under the Ohio Consumer Sales Practices Act, Ohio Revised Code

1345.01 et seq., Ohio Deceptive Trade Practices Act, Ohio Revised Code 4165.01 et seq., common law fraud, abuse of process, defamation, and civil conspiracy.

6. This Court has original federal question jurisdiction of the above-entitled action pursuant to 28 U.S.C. § 1331, 15 U.S.C. § 1692k(d), and supplemental jurisdiction pursuant to 28 U.S.C. § 1367; and the action may therefore be removed to this Court pursuant to 28 U.S.C. § 1441.

7. Copies of all state court process, pleadings, or orders served on removing parties in the above-entitled action are attached hereto as Exhibit A.

8. This notice is filed with this Court within 30 days after receipt of service on the named defendants of the summons and complaint in the above-entitled action.

9. Defendants Portfolio Recovery Associates, LLC and Portfolio Recovery Associates, Inc. have consented to the removal of this action to the United States District Court for the Northern District of Ohio, and hereby join in the within notice of removal. Copies of the joint consent is attached hereto as Exhibit B.

WHEREFORE, removing party prays that the above-entitled action be removed from the Cuyahoga County Court of Common Pleas to this Court.

Respectfully Submitted:


/s/ R. Glenn Knirsch
R. GLENN KNIRSCH, SCR#0080770
JAVITCH, BLOCK, & RATHBONE, LLP
1100 Superior Avenue, 19th Floor
Cleveland, Ohio 44114
Ph:     (216) 623-0000 x. 3088
Fax:    (216) 525-4962
E-mail: gknirsch@jbandr.com

/s/ Michael D. Slodov
MICHAEL D. SLODOV, SCR#0051678
JAVITCH, BLOCK & RATHBONE, LLP
1100 Superior Ave., 19th Floor
Cleveland, Ohio 44114
Ph:     (216) 623-0000 ex. 3057
Fax:    (216) 685-3038
E-mail: mslodov@jbandr.com

*Attorneys for Defendant,*
*Javitch, Block, & Rathbone, LLP*

### PROOF OF SERVICE

A true, authentic and accurate copy of the foregoing was sent via U.S. Mail, postage prepaid, on May 26, 2009, to:

Anand N. Misra
The Misra Law Firm, LLC
3659 Green Road, Suite 100
Beachwood, OH 44122

Robert S. Belovich
5638 Ridge Road
Parma, OH 44129

/s/ R. Glenn Knirsch
R. Glenn Knirsch, SCR#0080770

COURT OF COMMON PLEAS
CUYAHOGA COUNTY, OHIO

Eleanor H. Thacker
454 E. Madison Avenue
Springfield, OH 45503

     **Plaintiff**

    vs.

Javitch, Block & Rathbone L.L.P.
1100 Superior Avenue - 19th Floor
Cleveland, Ohio 44114-2531

And

Portfolio Recovery Associates LLC
140 Corporate Blvd
Norfolk, VA 23502

And

Portfolio Recovery Associates Inc.
120 Corporate Blvd
Norfolk, VA 23502

     **Defendants.**

)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)

Complaint

CASE    JOHN P O'DONNELL
CV 09 690960

Judge _____

$ 100.00  DEPOSITED

APR 24 2009

SECURE COSTS
GERALD E. FUERST, Clerk of Courts
PER _____ DEPUTY

INDIVIDUAL AND CLASS ACTION
**COMPLAINT**

(JURY DEMAND ENDORSED HEREON)

1. This is an action for damages and other relief by a consumer for Defendants'
  violations of the Fair Debt Collection Practices Act, 15 U.S.C. 1692, et seq.; ("FDCPA"),
  the Ohio Consumer Sales Practices Act, Ohio Revised Code 1345.01 et seq. ("OCSPA"),
  Ohio Deceptive Trade Practices Act, Ohio Revised Code 4165.01 et seq. ("ODTPA"),
  and common law fraud, abuse of process, defamation, and civil conspiracy.

2. Plaintiff, Eleanor H. Thacker ("Thacker"), is a natural person residing at 454 E.
  Madison Avenue, Springfield, OH 45503.

3.  Thacker is a "Consumer" as defined in the Ohio Consumer Sales Practice Act, R.C. §
    1345.01(D) and similar consumer protection statutes.

4.  Defendant Portfolio Recovery Associates LLC ("PRAL") is a firm regularly engaged in
    the collection of consumer debts in this state.

5.  PRAL is a "debt collector" as defined in 15 U.S.C. §1692a(6) and similar consumer
    protection statutes.

6.  PRAL is a "supplier" as defined in Ohio R.C. § 1345.01(C) and similar consumer
    protection statutes.

7.  Defendant Portfolio Recovery Associates Inc. ("PRAI") is a firm regularly engaged in
    the collection of consumer debts in this state.

8.  PRAI is a "debt collector" as defined in 15 U.S.C. §1692a(6) and similar consumer
    protection statutes.

9.  PRAI is a "supplier" as defined in Ohio R.C. § 1345.01(C) and similar consumer
    protection statutes.

10. On information and belief, Defendant  PRAI takes individual actions in directing the
    unlawful actions of PRAL that are the subject of this Complaint; creating the
    procedures and business practices employed by PRAL in furtherance of such unlawful
    actions taken by PRAL; obtaining, transferring and making available to PRAL the
    alleged claims to be made against consumers including the plaintiff; conspiring with
    PRAL to commit the unlawful actions taken by PRAL, and aiding and abetting such
    unlawful actions by providing necessary resources for the unlawful actions to be
    taken.

11. Hereafter, when referred to collectively, defendants PRAI and PRAL will be referred to
    as "PRA."

12. Defendant Javitch, Block & Rathbone L.L.P. ("Javitch") is a law firm regularly engaged
    in the collection of debts with its principal place of business located at 1100 Superior

Avenue, 19th Floor, Cleveland, Ohio 44114.

13.  Javitch is a "debt collector" as defined in 15 U.S.C. §1692a(6).

14.  Javitch is a "supplier" as defined in Ohio R.C. § 1345.01(C) and similar consumer
protection statutes.

15.  PRA are engaged in the business of buying debt in default, and thereafter attempting
to collect the debt.

16.  Bringing legal actions is an integral and important part of PRA's debt collection
business.

17.  PRA have filed thousands of unlawful consumer collection lawsuits making false
statements, using false documents and with full knowledge that many lawsuits were
being filed well beyond the applicable period of limitations.

18.  In such lawsuits, PRA demand interest and costs.

19.  Such lawsuits are based on debt allegedly acquired by PRA.

20.  Such debt is already in default at the time it is so acquired by PRA.

21.  At the time of acquistion and before filing the unlawful lawsuits, PRA know or should
know about the lack of documentation as to the validity of the debt or to plead or
prove liability for the amount claimed due, and the amount of interest contractually
due.

22.  The prices paid by PRA for the acquired debt reflect PRA's knowledge of the lack of
such documentation.

23.  PRA commence or cause to commence the unlawful lawsuits without adequate or
reasonable investigation of the debt sought to be collected.

24.  On information and belief, in order to conceal their inadequate investigation or to
appear to meet pleading obligations, PRA either fail to attach required documents to
filed pleadings or  attach documents that falsely represent the amount due or the
agreement under which a consumer is allegedly bound.

25. Through such false documents and associated language in the pleadings, PRA implicitly represent the existence and availability of agreements that entitle PRA to claimed amounts.

26. Each such action is a "Consumer Transaction" as defined in Ohio R.C. 1345.01(A) and similar consumer protection statutes.

27. On information and belief, PRA act in collaboration to aid and abet in the filing of unlawful lawsuits against consumers and to commit the unlawful acts described in this Complaint.

28. On May 2nd, 2008, defendant PRAL filed a lawsuit against plaintiff in the Clark County Court of Common Pleas, as Case No. 08-CV-0627. A copy of the complaint and summons are attached hereto as Exhibit A.

29. The claims made by PRAL in its case against plaintiff are false.

30. Defendants PRA and Javitch knowingly made or caused to be made false statements in the complaint as to the fact, nature and amount of the debt allegedly owed by plaintiff.

31. Defendants PRA and Javitch knowingly made or caused to be made false statements in the complaint as to the investigation they conducted to determine the truth of the claims made in the complaint.

32. Defendants PRA and Javitch knowingly made or caused to be made false statements in the complaint as to the efforts they made to meet obligations imposed upon them by the Ohio Rules of Civil Procedure.

33. Defendants PRA and Javitch filed the lawsuit against plaintiff despite knowing that they were incompetent to do so because the statute of limitations had already expired.

34. Defendants PRA and Javitch concealed their incompetence to file the lawsuit despite being obligated to disclose such incompetence by the Ohio Rules of Civil Procedure.

35. Defendants PRA and Javitch demanded interest and costs in the lawsuit knowing that

they did not have the ability to do so.

36. On information and belief, defendants PRA and Javitch reported or caused to be reported inaccurate credit information about plaintiff, as to the illegally filed lawsuit, which they knew or should have known was false.

<u>Class Allegations</u>

37. Thacker repeats and realleges and incorporates by reference preceding paragraphs.

38. Counts One through Seven of this Complaint are brought on behalf of Thacker and a class of Consumers, similarly situated to Thacker, who have been or may be subjected to Defendants' unlawful collection related practices.

39. There are two classes of Consumers, and Thacker is a member of both classes.

40. The first class of Consumers consists of all persons who were named as a defendant in a civil action in which "Portfolio Recovery Associates LLC" or "Portfolio Recovery Associates Inc." was the named plaintiff, and which action was filed beyond the period of limitations.

41. The second class of Consumers consists of all persons who were named as a defendant in a civil action in which "Portfolio Recovery Associates LLC" or "Portfolio Recovery Associates Inc." was the named plaintiff, and the complaint filed therein falsely represented the agreement under which a consumer was allegedly bound.

42. Certification of a class under Ohio Civil Rule 23 is appropriate in that the class is so numerous that joinder of all members is impracticable, there are questions of law or fact common to the class, the claims of the representative party are typical of the claims of the class, and the representative will fairly and adequately protect the interests of the class.

43. The class is so numerous that joinder of all members is impracticable.

44. PRA, in collaboration with other defendants, has filed thousands of cases without having the legal competence to do so.

45:   It is therefore reasonable to infer that the number of class members exceeds those required for satisfaction of the numerosity requirement.

46.   There are questions of law and fact common to the class, including the nature and extent of defendants' collection practices, procedures and policies, and whether these practices, procedures and policies violate consumer protection laws including the Fair Debt Collection Practices Act.

47.   These common questions of law or fact predominate over any questions affecting only individual members.

48.   A class action is superior to other available methods for the fair and efficient adjudication of this controversy.

49.   The claims and defenses of Thacker are typical of the claims and defenses of the class members.  All are based on the same legal and factual theories and predominant common questions.

50.   Thacker will fairly and adequately protect the interest of the class.  She has a substantial pecuniary stake in the controversy, and has retained experienced counsel. Neither Thacker nor her counsel have any interests which might cause them not to vigorously pursue this action.

51.   Defendants have acted or refused to act on grounds generally applicable to the class, thereby making appropriate final injunctive relief or corresponding declaratory relief with respect to the class as a whole.

52.   Each class member's claim is relatively small, thus it is impracticable for class members to file individual actions.  Also, because defendants are well capitalized entities and effective presentation of the causes of action asserted requires significant expense, the interest of members of the class in individually controlling the prosecution or defense of separate actions is minimal.

53.   PRA in collaboration with other defendants, generally institute collection actions and

secure default judgments against Consumers, thus Consumers are unaware of their rights. A class action is therefore essential to prevent a failure of justice.

54. The difficulties likely to be encountered in the management of this class action are much less than in the case of many types of actions routinely certified, such as class actions for securities fraud.

### Count One - Class Claim: FDCPA

55. Thacker repeats and realleges and incorporates by reference preceding paragraphs.

56. PRA are "debt collectors" as defined by the FDCPA, 15 U.S.C. § 1692a(6).

57. PRA violated the FDCPA through their consumer debt collection activities.

58. PRA's violations include, but are not limited to, the following:

    a. PRA violated 15 U.S.C. § 1692e when they commenced and maintained time-barred debt collection lawsuits against the Plaintiff and class members, even though they did not have the legal right to do so.

    b. PRA violated 15 U.S.C. § 1692e and § 1692f when they made false, misleading and/or unfounded representations in lawsuits as to agreements under which a consumer was allegedly bound.

    c. PRA violated 15 U.S.C. § 1692f when they demanded payment for costs and interest in such lawsuits.

    d. PRA violated 15 U.S.C. § 1692e(8) by reporting or causing to report inaccurate credit information, as to the illegally filed lawsuits, which they knew or should have known was false.

    e. PRA violated 15 U.S.C. § 1692e, § 1692f and § 1692d when they employed a pattern and practice of filing invalid lawsuits, with inadequate investigation of the debt before filing the lawsuit, with the use of false documents and false representations with the improper motive of cheating unsuspecting or

unsophisticated consumers.

59. Javitch took individual actions to assist and further the commission of the above described FDCPA violations.

60. Thacker and the class suffered damages as a result of defendants' violations.

61. As a result of the violations of the FDCPA, the defendants are liable to the Plaintiff and the class for declaratory judgment that defendants' conduct violated the FDCPA, and actual damages, statutory damages, and costs and attorney's fees.

**Count Two - Class Claim: Deceptive, Unfair or Unconscionable Acts**

62. Thacker repeats and realleges and incorporates by reference all the preceding paragraphs.

63. Transactions between PRA and the class are consumer transactions.

64. In connection therewith, PRA knowingly committed unfair, deceptive and/or unconscionable acts or practices.

65. PRA's violations include, but are not limited to, the following:

   a. Actions taken in violation of statutory obligations.

   b. Actions taken to commence and maintain debt collection lawsuits against the class members, even though they did not have the legal right to do so.

   c. Actions taken to commence and maintain debt collection lawsuits against the class members, with the use of false or misleading representations in such lawsuits as to agreements under which a consumer was allegedly bound.

   d. Defendants violated Ohio R.C. §1345.02 and §1343.03 when they demanded payment for costs and interest in such lawsuits.

66. Javitch took individual actions to assist and further the commission of the above described violations.

67. Thacker and the class suffered damages as a result of defendants' violations.

### Count Three - Class Claim: Deceptive trade practices

68.  Thacker repeats and realleges and incorporates by reference all the preceding paragraphs.

69.  PRA knowingly engaged in deceptive trade practices in violation of R.C. §4165.02(A)(2), §4165.02(A)(7), and §4165.02(A)(9) by misrepresenting the origin, nature and validity of the illegally filed lawsuits and the monetary elements constituting the sums claimed as due from Thacker and the class she seeks to represent.

70.  Javitch took individual actions to assist and further the commission of the above described violations.

71.  Thacker and the class were injured and are likely to suffer further injury as a result of the deceptive trade practices of the defendants.

### Count Four -  Class Claim: Fraud

72.  Thacker repeats and realleges and incorporates by reference all the preceding paragraphs.

73.  PRA committed fraud by representing that they had the legal right to recover debt under credit card agreements when they knew they did not have such right.

74.  PRA committed fraud by concealing material provisions in the credit card agreements they sought to enforce, which provisions if revealed would show that PRA's claim was time-barred and thus reveal the falsity of PRA's claim that it had a right to recover the claimed debt.

75.  Such false representations were made to courts, Thacker and the class.

76.  Such false representations were made in pleadings filed in aforementioned actions.

77.  The dates, times and place of such false representations are documented in the court cases filed by PRA.

78. PRA knew of the falsity of these representations or acted in reckless disregard of the truth in making the false representations.

79. PRA made such false representations with the purpose and intention to mislead the courts, Thacker and the class.

80. Thacker, the class and the courts justifiably acted in reliance upon such misrepresentations.

81. Thacker and the class suffered damages as a proximate result of such reliance.

### Count Five - Class Claim: Civil Conspiracy

82. Thacker repeats and realleges and incorporates by reference all the preceding paragraphs.

83. PRA created joint collection platforms and strategies and acted in concert, with each other and with Javitch, under an agreement to commit the unlawful acts described above, and to initiate lawsuits in an unlawful manner.

84. In accordance with agreement, plan or understanding, one or more of the defendants did commit the above described unlawful acts against Thacker and the class.

85. Thacker and the class suffered injury as a result of these actions.

86. Defendants therefore committed the tort of civil conspiracy.

### Count Six - Class Claim: Abuse of Process

87. Thacker repeats and realleges and incorporates by reference all the preceding paragraphs.

88. Defendants filed collection actions against consumers.

89. Defendants filed such actions for the improper purpose of placing unwarranted pressure upon consumers to make payments or face damage to their credit history, for the improper purpose of taking unfair advantage of unsophisticated consumers, or for the improper purpose of obtaining more money from consumers than

Defendants' knew could possibly be due and owing on an underlying obligation.

90. Consumers, like Thacker and the class she seeks to represent, have suffered and continue to suffer damage as a direct result of this wrongful use of process.

91. Defendants have therefore committed the tort of abuse of process.

92. Thacker and the class were injured as a result of Defendants' actions.

### Count Seven – Class Claim: Defamation

93. Thacker repeats and realleges and incorporates by reference all the preceding paragraphs.

94. PRA published false information about Thacker and the class by disseminating or causing information to be disseminated that these consumers were the subject of legally authorized collection lawsuits.

95. Such defamatory information was published to the public, prospective employers, potential creditors, and merchants causing injury to the reputation generally and credit reputation in particular of Thacker and the class.

96. Thacker alleges that the publication of such defamatory information by PRA was done maliciously, without privilege, and with intent to apply undue coercion and to injure Thacker and the class.

97. PRA have therefore defamed Thacker and the class.

98. Thacker and the class were injured as a result of the actions of PRA.

### Count Eight - Individual Claim: FDCPA

99. Thacker repeats and realleges and incorporates by reference all the preceding paragraphs.

100. On information and belief, defendants falsely represented the amount and character of the alleged debt by falsely stating, in Complaint ¶2, that Thacker owed $15,878.42 for "money loaned on defendant's charge card." See Exhibit A.

101. Defendants violated the FDCPA, including 15 U.S.C. § 1692e(2)(A).

102. Thacker was injured as a result of the actions of defendants.

### Count Nine -  Individual Claim: Ohio CSPA

103. Thacker repeats and realleges and incorporates by reference all the preceding paragraphs.

104. Defendants also knowingly committed unfair, deceptive and/or unconscionable acts or practices through the above actions described under Count Eight, including actions taken in violation of statutory obligations.

105. Thacker was injured as a result of the actions of defendants.

### Count Ten -  Individual Claim: Fraud

106. Thacker repeats and realleges and incorporates by reference all the preceding paragraphs.

107. Defendants committed fraud by falsely stating, in Complaint ¶2, that Thacker owed $15,878.42 for "money loaned on defendant's charge card."  See Exhibit A.

108. Such false representations were made to the court and to Thacker.

109. The dates, times and place of such false representations are documented in the court docket for Clark County Court of Common Pleas Case No. 08-CV-0627.

110. Defendants knew or should have known of the falsity of these representations.

111. Defendants made such false representations with the purpose and intention to mislead Thacker and the court.

112. Thacker and the court were justified in relying upon such representations and did so rely.

113. Thacker suffered damages as a proximate result of such reliance.

### Count Eleven -  Individual Claim: Civil Conspiracy

114. Thacker repeats and realleges and incorporates by reference all the preceding

paragraphs.

115. Defendants created joint collection plans and strategies and acted in concert with each other and under an agreement to commit the unlawful acts described in Counts Eight through Ten above.

116. In accordance with agreement, plan or understanding, Defendants did commit the above described unlawful acts against Thacker.

117. Thacker suffered injury as a result of these actions.

118. Defendants therefore committed the tort of civil conspiracy.

### Damages

119. Thacker and each member of the class described above have been or may be injured by defendants unlawful acts and practices, in one or more of the following ways:

    a.  Monetary, reputation or credit injuries.

    b.  Expenditure of money, time and effort in resisting Defendants' illegal actions.

    c.  Creation of an unlawful and fictitious indebtedness, for which the consumer is ostensibly liable.

    d.  Payment of the charges which are unreasonable, unnecessary or a penalty.

120. WHEREFORE, Thacker respectfully prays that judgment be entered against defendants for the following:

    a.  Award compensatory and punitive damages in an amount exceeding $25,000.00.

    b.  Award statutory damages.

    c.  Order PRA to immediately cease and desist prosecution of the unlawful civil actions to collect debts.

    d.  Order a cancellation of all debts asserted by PRA in those cases.

e.  Order a refund of all moneys collected by PRA in cases filed on behalf of PRA and where PRA did not have the legal right to bring such action.

f.  Order PRA to refrain from all debt collection activities for a period of years as the court in its discretion may determine.

g.  Award attorney's fees, costs, and expenses.

h.  Award any other relief to which Thacker and the class may be entitled to in law or equity.

i.  Make declaratory judgments and order such other and further relief as may be just and proper.

Respectfully submitted with a demand for a jury trial on all issues.

_____
Anand N. Misra (#0067594)
The Misra Law Firm, LLC
3659 Green Road, Suite 100
Beachwood, Ohio 44122
(216) 752 3330
misraan@misralaw.com

Robert S. Belovich (#0024187)
5638 Ridge Road
Parma, Ohio 44129
(440) 884-8018
rsb@belovichlaw.com

Attorneys for Plaintiff

# COURT OF COMMON PLEAS, CLARK COUNTY, OHIO

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*
## SUMMONS
\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

CASE NO: 08CV0627

CAPTION: PORTFOLIO RECOVERY ASSOCIATES LLC vs. ELEANORE H THACKER

TO:   File Copy

You have been named as defendant in a complaint that has been filed in the Clark County Courthouse, Court of Common Pleas, Springfield, Ohio, by

PORTFOLIO RECOVERY ASSOCIATES LLC
140 CORPORATE BLVD
NORFOLK VA  23502

*FILED 2008 MAY -2  PH 2:12  RONALD E VINCENT CLERK COMMON PLEAS COURT CLARK COUNTY, OHIO*

plaintiff (s).  A copy of the COMPLAINT
is/are attached hereto.  The name and address of plaintiff's attorney is:

BRIAN C BLOCK
1100 SUPERIOR AVE/19TH FLOOR
CLEVELAND OH  44114

You are hereby summoned and required to file an answer to the complaint with the Court within twenty-eight days after service of this summons on you, exclusive of the day of service.  You must also serve upon the plaintiff's attorney, or upon the plaintiff, if he has no attorney of record, a copy of this answer within three days of being filed with the Court.

If you fail to answer, appear and or defend, judgment by default will be rendered against you for the relief demanded in the complaint.

RONALD E VINCENT, CLERK OF COURTS

*Sonia Unsworth*

DEPUTY CLERK

*Issued*
5/2/2008
*Tax postage $ 5.21*

08CV0627
7160 3901 9845 4719 508
ELEANORE H THACKER
454 E MADISON AVE
SPRINGFIELD, OH 45503

Certified Article Number
7160 3901 9845 4719 9490
SENDERS RECORD

**Exhibit A - Page 1**

IN THE CLARK COUNTY COURT OF COMMON PLEAS
CLARK COUNTY, OHIO

Portfolio Recovery Associates, LLC )
  Assignee Of Capital One Bank )
140 Corporate Blvd )       **CASE NUMBER:**
Norfolk, VA 23502- )

        **Plaintiff** )       **JUDGE:**

vs. )

                      )    **COMPLAINT FOR MONEY LOANED**

Eleanore S. Thacker )
454 E. Madison Avenue )
Springfield, OH 45503- )
                     )
                     )
          **Defendant(s)** )

**'08 - CV  0627**

    1. Plaintiff acquired, for a valuable consideration, all right, title and interest in the credit card debt set forth below originally owed by Defendant(s) to CAPITAL ONE BANK.
As a result of the assignment, Plaintiff became, and now is, entitled to recover the amount loaned to Defendant(s) on credit card number xxxx-xxxx-xxxx-7946.

    2. There is presently due the Plaintiff from the Defendant(s) for the money loaned on defendant's charge card, the sum of $15,878.42.

    3. The account records are not attached hereto because, upon information and belief: (a) Plaintiff is not the original creditor and does not have possession, custody or control of said records; (b) copies were sent monthly to the Defendant, and are or were in Defendant's possession, custody or control; (c) said account records may be voluminous.

    4. Plaintiff notified Defendant(s) of the assignment and demanded that Defendant(s) pay the balance due, but no part of the foregoing balance has been paid.

FILED
2008 MAY -2 AM 9:56
J.R. VINCENT CLERK
COMMON PLEAS COURT
CLARK COUNTY, OHIO

**Exhibit A - Page 2**

5. Defendant(s) is/are in default on this repayment obligation.

WHEREFORE, Plaintiff prays for judgment against Defendant(s) in the amount of $15,878.42 with statutory interest from the date of judgment, costs of this action, and such other and further relief as the Court deems just and proper under the circumstances.

Brian C Block, SCR # 0076526
Stephan F. Babik, SCR #0080165
Attorneys for Plaintiff
Javitch, Block & Rathbone LLP
1100 Superior Ave, 19Th Floor
Cleveland OH 44114-2518
(216) 687-1199
CLE@JBANDR.COM
FAX 216-623-0190

SUITNAO1

**Exhibit A - Page 3**

# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF OHIO
### EASTERN DIVISION

| | | |
|---|---|---|
| Eleanor H. Thacker, | ) | CASE NO.: |
| | ) | |
| Plaintiff, | ) | JUDGE: |
| | ) | |
| vs. | ) | |
| | ) | |
| Javitch, Block, & Rathbone, L.L.P., | ) | **JOINT CONSENT TO REMOVAL** |
| | ) | **BY DEFENDANTS** |
| and, | ) | **PORTOLIO RECOVERY** |
| | ) | **ASSOCIATES, LLC,** |
| Portfolio Recovery Associates, LLC, | ) | **&** |
| | ) | **PORTOLIO RECOVERY** |
| and, | ) | **ASSOCIATES, INC.** |
| | ) | |
| Portfolio Recovery Associates, Inc., | ) | |
| | ) | |
| Defendants. | ) | |

Without waiving any of its defenses or any of its other rights, Defendant Portfolio Recovery Associates, LLC, and Portfolio Recovery Associates, Inc., hereby jointly consent to removal of the above-captioned matter from the Court of Common Pleas, Cuyahoga County, Ohio to the United States District court for the Northern District of Ohio.


Portfolio Recovery Associates, LLC
By: _____
Its: _____

Portfolio Recovery Associates, Inc.
By: _____
Its: _____

H25574

STATE OF OHIO          )          IN THE Bedford Municipal Court
                    SS.
COUNTY OF CUYAHOGA   )

                           CASE NO.  09CVF03317

NCO PORTFOLIO MANAGEMENT

           Plaintiff(s)       )

           - vs -          )   JOURNAL ENTRY OF JUDGMENT

CHRISTOPHER G HRIVNAK

           Defendant(s)     )

   This matter came on for consideration on 07/29/2009, upon Defendant Motion to Certify to Common Pleas Court as Defendant's Counterclaim requests over $25,000.00.  The Court finds said Motion to Certify to Common Pleas Court well taken and the same is hereby granted.  It is therefore ordered that upon the Defendant remitting a check for $100.00 made payable to the Cuyahoga County Court of Common Pleas and a check for $45.00 made payable to Bedford Municipal Court, this matter will be transferred for further proceedings in accordance with the law.

   Adjudicated by Judge Brian J. Melling.

                                _____
                                    JUDGE

cc:
   CHRISTOPHER G HRIVNAK
   JAVITCH, BLOCK & RATHBONE L.L.P.
   NCO FINANCIAL SYSTEMS, INC.
   NCO GROUP, INC.
   NCO PORTFOLIO MANAGEMENT
   NCO PORTFOLIO MANAGEMENT, INC.

AUG 0 1 2009

RECEIVED
THOMAS E DAY, JR.
CLERK OF COURT
BEDFORD MUNICIPAL COURT

Thursday, July 30, 2009

   JOURNAL BOOK/PAGE 294 - 102

MDS