UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| CHRISTOPHER G. HRIVNAK, | : | Case No.  1:10-CV-646 |
| Plaintiff, | : | |
| | : | JUDGE KATHLEEN O'MALLEY |
| v. | : | |
| NCO PORTFOLIO MANAGEMENT, Inc., *et al.*, | : | MEMORANDUM & ORDER |
| Defendants. | : | |

Before the Court are a number of pending motions.  As explained below, Plaintiff Christopher Hrivnak's Motion to Remand (Doc. 17) is **DENIED**, Hrivnak's Motion to Strike (Doc. 18) is **DENIED**, Hrivnak's Motion for Class Certification is **TERMED** (Doc. 18), Defendant Javitch, Block & Rathbone LLP's ("Javitch") Unopposed Motion to Amend their Notice of Removal (Docs. 20) is **GRANTED**, and Javitch's Motion for Judgment on the Pleadings (Doc. 4) is **TERMED**.

I. **PROCEDURAL HISTORY**

On June 4, 2009, NCO Portfolio Management ("NCM") filed an action in Bedford Municipal Court against Christopher G. Hrivnak.[1]  On July 9, 2009, Hrivnak filed an Answer and Counterclaim.  Hrivnak's counterclaims included a claim under the Fair Debt Collection Practices

---

[1] The procedural history is taken largely from Plaintiff Christopher G. Hrivnak's Motion to Remand.  (*See* Doc. 17-1 at 1-4.)  The defendants do not dispute his recitation of this history, and it is difficult for the Court to discern independently all of the events that occurred in the state courts. The state court docket is currently available to the Court only as hundreds of pages of non-searchable and continuous text (*See* Docs. 1-1, 1-2), which does not facilitate appropriate review. Moving forward, any party wishing to reference events in the state court must attach the relevant state court docket entries as exhibits to their briefing, and each state court docket entry should be a separate attachment.

Act ("FDCPA"), and added several new parties to the action as counterclaim defendants: NCO Portfolio Management, Inc. ("NPI"); NCO Group, Inc. ("NGI"); NCO Financial Systems, Inc. ("NFS"); and Javitch.

It appears that the Defendants then filed a motion before the municipal court seeking to dismiss Hrivnak's counterclaims.  Rather than dismiss the claims, the Bedford Municipal Court transferred this action to the Cuyahoga County Court of Common Pleas, as the counterclaim sought monetary relief exceeding the Municipal Court's jurisdiction.  The Defendants apparently renewed their motion to dismiss Hrivnak's counterclaim, which this time was denied.

On October 26, 2009, NPM filed an Answer to Hrivnak's counterclaim.

Some discovery was conducted, and, on January 8, 2010, NPM moved to dismiss its own complaint.  This motion was granted, and, on January 19, 2010, Javitch filed a motion asking the state court to realign the parties.  This motion was opposed by Hrivnak, who asserted that the motion to realign was an improper attempt to vest this Court with jurisdiction.  On February 11, 2010, however, the Common Pleas Court granted Javitch's motion, and instructed Hrivnak to "file a complaint asserting his affirmative claims for relief."

On March 15, 2010, Hrivnak filed a complaint as instructed by the state court.  Pursuant to the state court's realign order, Original-Defendant Hrivnak was now identified as the Plaintiff, and Original-Plaintiff NCM and Original-Counterclaim Defendants NPI, NGI, NFS, and Javitch were now identified as defendants.

On March 29, 2010, Javitch, with the consent of the other defendants (including Original-Plaintiff NCM), filed a removal notice with this Court.  The pending motions followed.

2

## II.  MOTION TO REMAND

The threshold issue before the Court is whether subject matter jurisdiction is proper, which is the subject of Hrivnak's Motion to Remand (Doc. 17).  Hrivnak argues that this situation is indistinguishable from the one in which a plaintiff attempts to remove an action solely on the basis of a counterclaim; he asserts that jurisdiction cannot be conferred upon this Court simply because the state court realigned the parties.  (*See generally id.*)  Javitch's argument is that the state court realignment order distinguishes this case from one in which a party attempts to remove based upon a counterclaim, because the state court's realignment order transformed Hrivnak's counterclaim into a claim.  (Doc. 21 at 5.)[2]

### A.  Standard of Review

On a motion for remand, the defendant bears the burden of establishing that removal was proper.  *Long v. Bando Mfg. of America, Inc.*, 201 F.3d 754, 757 (6th Cir. 2000).  Removal jurisdiction raises significant federalism concerns and, for this reason, federal courts must strictly construe such jurisdiction.  *See Merrell Dow Pharm. Inc. v. Thompson*, 478 U.S. 804, 808 (1986); *Shamrock Oil & Gas Corp. v. Sheets*, 313 U.S. 100, 104 (1941).  Accordingly, a federal court must resolve any doubt of its removal jurisdiction in favor of state court jurisdiction.  *Shamrock Oil*, 313 U.S. at 108-09; *Her Majesty the Queen in Right of the Province of Ontario v. City of Detroit*, 874 F.2d 332, 339 (6th Cir. 1989) (citation omitted).

---

[2] This is a generous characterization of Javitch's argument.  Javitch argues this case as if Hrivnak had always been the Plaintiff, the other parties had always been Defendants, and Hrivnak had just filed an amended complaint that, for the first time, set forth a basis upon which this action could be removed.  In short, Javitch assumes that which it seeks to prove.  (*See* Doc. 21 at 5 ("[R]emoval may be affected long after the initial complaint is filed, and need only be filed within 30 days from the date on which it first appears that the Plaintiff has set forth a removable cause of action . . . .").)

3

**B.  Discussion**

The question before the Court is whether realignment by a state court can confer subject matter jurisdiction in federal court where none existed at the inception of the lawsuit.  In the particular context of this case, to find that removal is proper would arguably limit two rather important jurisdictional principals.  First, although the notice of removal was filed by Javitch, there is no escaping the fact that it is joined by NPM: in other words, there is a sense in which a plaintiff is attempting to remove its own lawsuit.  Construed this way, there is a problem.  *See Abulkhair v. Liberty Mut. Ins. Co.*, Case No. 15-1580, 2010 U.S. App. LEXIS 9699, at *3 (3d Cir. May 12, 2010) ("[I]t is axiomatic that a plaintiff may not remove an action to federal court." (quoting *La Chemise Lacoste v. Alligator Co.*, 506 F.2d 339, 343 n.4 (3d Cir. 1974)); *see also* 14C Wright, Miller, Cooper, *et al.*, Federal Practice and Procedure §3730 (4th ed. 2010) ("The federal courts . . . often speak[] of the right to remove as being limited to 'true' defendants.").  Second, although Hrivnak was realigned as the "plaintiff," the claim that forms the basis for removal began life as a counterclaim, and a counterclaim may not form the basis for removal.  *Capital One Bank (USA) N.A. v. Jones*, Case No. 09-2833, 2010 U.S. Dist. LEXIS 29540, at *4 (N.D. Ohio Mar. 29, 2010), *petition for review denied*, CA 10-309 (6th Cir. June 17, 2010) ("§ 1441 does not allow removal by a counterclaim defendant . . . .");  *Cross Country Bank v. McGraw*, 321 F. Supp. 2d 816, 820 (S.D. W.Va. 2004) ("[T]here can be no serious contention that the basis for federal subject matter jurisdiction can ordinarily be contained in a defendant's counterclaim." (citing *Holmes Group, Inc. v. Vornado Air Circulation Sys.*, 535 U.S. 826 (2002))).

To order remand, however, is not without its own conceptual problems.  First, remand would limit the rule that subject matter jurisdiction must be evaluated at the time of removal.  *See, e.g.*, *Northup Props., Inc. v. Chesapeake Appalachia, L.L.C.*, 567 F.3d 767, 769-70 (6th Cir. 2009).  There is, after all, a way to view this case as no more complicated than any other case in which the

4

filing of an amended complaint indicates for the first time that an action is removable.  Second, an order of remand could only issue if this Court finds that the state court's realignment order does not really mean what it says, a troubling proposition in its own right.

No circuit appears to have considered this question outside of readily distinguishable contexts, the few district courts to have discussed this issue are not in agreement with each other, and most of those opinions are also arguably distinguishable from the unique facts presented here. In short, there is not a clear answer here, much less a binding one.

### 1.  The Removal Statute

The question before the Court is fundamentally one of statutory interpretation.  The federal removal statute explains, in relevant part:

> The notice of removal of a civil action or proceeding shall be filed within thirty days after the receipt by the defendant, through service or otherwise, of a copy of the initial pleading setting forth the claim for relief upon which such action or proceeding is based . . . .

28 U.S.C. § 1446(b).  In this case, unfortunately, the statute does not answer the question, the statute *is* the question: should the Court consider all of the parties who removed this case to be "defendants" as the term is used in § 1446(b).[3]

The Supreme Court has made clear that a district court must look beyond the case caption to determine whether removal was proper:

> Diversity jurisdiction cannot be conferred upon the federal courts by the parties' own determination of who are plaintiffs and who defendants.  It is our duty, as it is that of the lower federal courts, to look beyond the pleadings and arrange the parties according to their sides in the dispute.  Litigation is the pursuit of practical ends, not a

---

[3] There is also another question, which is whether Hrivnak's pleading is a "claim" under this statute.  Within the confines of this case, however, the Court cannot divine any reason that these answers would diverge.  In other words, if the removing parties are properly characterized as defendants, this could only be true if Hrivnak's pleading was a claim against them.  Similarly, if Hrivnak's pleading is truly a counterclaim for purposes of the removal statute, this must be because the removing parties are not really "defendants," as it is well-established that counterclaim defendants are not "defendants" as the term is used in § 1446(b).

game of chess.  Whether the necessary collision of interests exists, is therefore not to be determined by mechanical rules.  It must be ascertained from the principal purpose of the suit and the primary and controlling matter in dispute.

*Indianapolis v. Chase Nat'l Bank*, 314 U.S. 63, 70 (1941) (citations and quotation marks omitted); *see also, e.g.*, *Malison v. UPS*, Case No. 09cv629, 2009 U.S. Dist. LEXIS 115241, at *14 n.2 (N.D. Okla. Dec. 10, 2009) ("[W]hether diversity jurisdiction exists includes the realignment of the parties based on their real interests regardless of labels placed upon the parties by the litigants themselves or the state court." (citations omitted)).[4]  Although these cases refer to diversity jurisdiction and this case was removed based on federal question jurisdiction, the principle articulated in *Chase National Bank*, that  "federal courts [must] look beyond the pleadings and arrange the parties according to their sides in the dispute," applies with equal force here.

This being said, *Chase National Bank*, like the removal statute itself, is not really of much guidance, because it does not explain whether the Court should look to the "principal purpose of the suit" *at the time that it was originally filed in state court*, or whether the Court should instead consider the "principal purpose" of the suit *at the time of removal*.[5]

---

[4] Some circuits instruct their district courts to determine the proper alignment of parties by using what is known as the "substantial controversy test," whereas others instruct district courts to examine the "principal purpose of the suit."  *See United States Fidelity & Guar. Co. v. A & S Mfg. Co.*, 48 F.3d 131, 132 (4th Cir. 1995) (employing the principal purpose test and collecting cases). The distinction between these tests would not impact the outcome of the question before the Court: at the time this suit was filed in state court, the only claims were those asserted by NCM against Hrivnak, whereas at the time of removal, the only claims were those asserted by Hrivnak against the various defendants.  This opinion, however, discusses the "principal purpose of the suit" as instructed by the Sixth Circuit.  *See United States Fidelity and Guar. Co. v. Thomas Solvent Co.*, 955 F.2d 1085, 1089 (6th Cir. 1992) ("As applied to the present case, we agree with the Third, Fifth and Ninth Circuits that *Indianapolis Gas* requires that parties be aligned in accordance with the primary dispute in the controversy, even where a different, legitimate dispute between the parties supports the original alignment."); *Cleveland Hous. Renewal Project v. Deutsche Bank Trust Co.*, 606 F. Supp. 2d 698, 709 (N.D. Ohio 2009).

[5] It might be argued that there is direct guidance from the Third and Seventh Circuits on this question:

A determination of whether there is a collision of interests must be based on the facts as they existed at the time the action was commenced.  3A Moore's Federal Practice

### 2.  The Determinations of Past Courts

The few courts to have considered similar questions in the past have not reached uniform conclusions.  Although there are more cases indicating that a state court's realignment order *can* confer federal jurisdiction where none before existed than those finding the contrary, those cases are also more easily distinguished.  In particular, the Court has not located a single case in which a party who began an action as a plaintiff was later permitted to remove that action.

### a.  Cases Finding that State Court Realignment Can Confer Federal Jurisdiction

Most district courts have explained that a state court's realignment order can, at least in some situations, confer federal jurisdiction.  In particular, there does not seem to be much dispute that, when a state court severs a claim asserted by a defendant against a third-party defendant from the main demand and then realigns those parties, the former third-party defendant (now designated a defendant by the state court) is entitled to remove that new case.  *See F.L. Crane & Sons, Inc. v. IKBI, Inc.*, 630 F. Supp. 2d 718, 720 (S.D. Miss. 2009) ("The Fifth Circuit Court of Appeals . . . [has held] that removal is proper where the state trial court has severed the third-party defendant's claim from the main demand prior to removal." (citing *Central of G. R. Co. v. Riegel Textile Corp.*, 426 F.2d 935, 938 (5th Cir. 1970)); *Crump v. Wal-Mart Group Health Plan,* 925 F. Supp. 1214, 1220 (W.D. Ky. 1996) ("Grounds for removal on diversity jurisdiction arose when the state court severed

---

para. 19.03, at 56 (1989).  A court may, however, look at subsequent pleadings and proceedings in a case to determine the position of the parties, but only to the extent that they "shed light on the facts as they existed at the outset of the litigation and on the actual interests of the parties."  *American Motorists Ins. Co. v. Trane Co.*, 657 F.2d 146, 151 n. 3 (7th Cir. 1981).

*Employers Ins. of Wausau v. Crown Cork & Seal Co.*, 905 F.2d 42, 46 (3d Cir. 1990) (emphasis added).  When one looks closely at these cases and treatises, however, it is clear they are discussing situations in which parties file suit in federal court in the first instance.  It is unclear whether these cases stand for the proposition that diversity jurisdiction is measured from the commencement of the lawsuit in federal court, or whether they stand for the more specific proposition that alignment of the parties is fixed from the filing of a lawsuit in any court at all.

[Plaintiff's] claim and realigned the parties."). Arguably, these cases stand for the general proposition that a state court realignment confers removal jurisdiction. On the other hand, these cases are distinguishable on the grounds that the state court in those cases actually severed what was originally a third-party complaint from the main demand, creating an entirely new action.[6] Here, there is no question that NPM was characterized properly as a plaintiff at the inception of the state-court suit, and that NPI, NGI, NFS, and Javitch were characterized properly as counterclaim defendants[7] at that time: the state court only realigned the parties mid-litigation, after NPM dismissed its complaint. There was no order severing a portion of the action from the main body of it.

The Court next considers a decision by a district court within this Circuit, which remanded an interpleader action when that court was unable to determine which party should be characterized as the defendant and which should be characterized as the plaintiff. *See Tune, Entrekin & White, P.C. v. Magid*, 220 F. Supp. 2d 887, 890 (M.D. Tenn. 2002) ("In an interpleader case, the nominal plaintiff is merely formal and should be disregarded for purposes of determining diversity. The real dispute is between the two defendants, Landowners and Tenant, so they can be realigned as opposing parties for determining diversity jurisdiction."). That Court reasoned that its jurisdiction would depend on the state court's alignment of the action, not upon its own alignment assessment:

> It is clear that Landowners and Tenant are the opposing parties in this dispute, and that they are residents of different states. The removal issue ultimately comes down to which party will be designated as plaintiff and which party will be designated as

---

[6] In *Crump*, the state court did not assign a new docket number, but this did not seem relevant to the court in *Crump*, nor does it seem particularly relevant to this Court, because the state court in *Crump* "ruled that it would treat the cross-claim as a separate action . . . ." *Crump*, 925 F. Supp. at 1216.

[7] The state court labeled NPI, NGI, NFS, and Javitch as "third-party defendants," but that appears to have been erroneous. The counterclaims filed by Hrivnak (*see* Doc. 1-1 at 12-26) do not seek indemnification from NPI, NGI, NFS, and Javitch, but, rather, assert entirely new claims against them. Given that fact, these new parties were actually added as new party counterclaim defendants, which is how Hrivnak himself characterized them in his pleading.

defendant. If Tenant is plaintiff and Landowners are defendants, then the defendants will be residents of the state in which the original action was filed so there can be no removal and the case should be remanded. If Tenant is defendant and Landowners are plaintiffs, then the case was properly removed by the defendant and the case should not be remanded. . . .

[P]lacing either party as plaintiff would be arbitrary. If Landowners were made plaintiffs, it would be arbitrarily aligning the parties to manufacture federal jurisdiction. If Tenant were made plaintiff, it would be arbitrarily aligning the parties to disallow federal jurisdiction. Faced with such a decision, this Court finds persuasive those courts which have simply declined to realign the parties at all. . . . If the state court realigns the parties [such that Tenant is the defendant], Tenant may then seek removal again based on diversity jurisdiction.

*Tune*, 220 F. Supp. 2d at 890-92 (emphasis added). There is merit *Tune's* reasoning, but the language in *Tune* indicating that a state court's determination of the proper alignment of parties can confer subject matter jurisdiction upon a federal court is arguably dicta since it referenced a hypothetical circumstance that had not yet occurred. Thus, it is arguable that *Tune* should be limited to its facts – a case in which the Court determined the proper characterization of the litigation from its inception without reference to subsequent realignment prior to removal.

Finally, the Court turns to *Zea v. Avis Rent a Car Sys.*, 435 F. Supp. 2d 603, 607 (S.D. Tex. 2006). That case, like *Tune*, began as an interpleader action in state court. When the plaintiff in *Tune* filed a notice of non-suit as to its interpleader action, the parties that had been designated as third-party defendants asked the state court to realign the parties. *See id.* When the state court granted their motions, which had the effect of designating the third-party defendants as defendants, the now-defendants removed the action from state court. *See id.*[8] The federal court held that the state court realignment acted to confer diversity jurisdiction where none had existed before. *Id.* ("[T]he Court finds that the State Court's Realignment Order turned this case from a nonremovable case to a removable case, and that it was properly removed to this Court."). *Zea* surely provides

---

[8] *Zea* differs from cases in which the third-party complaint is severed from the main cause of action only in the sense that the plaintiffs in *Zea* did not require a court order to dismiss their complaint.

9

support for the notion that a state court realignment order can confer jurisdiction upon a federal court, even when that realignment is prompted by the dismissal of the original plaintiff's claims.  In *Zea*, however, realignment occurred after the original plaintiff was no longer part of the action – it did not put the original plaintiff in the position of becoming a removing defendant.

### b.  Cases Finding that State Court Realignment Cannot Confer Federal Jurisdiction

It appears that only two courts have considered situations in which a party who was originally a plaintiff later sought to remove the suit that it commenced in state court.  Those courts ultimately answered this question in the negative, although, as discussed more fully below, neither of those courts confronted a state court realignment order.  *See Rodriguez v. Fannie Mae*, 268 F. Supp. 2d 87, 90 (D. Mass. 2003) (citing *Reiter Oldsmobile, Inc. v. General Motors Corp.*, 477 F. Supp. 125 (D. Mass. 1979)).  Nevertheless, those courts used fairly strong language to reason that:

> The federal statutory directive is jurisdictional . . . . Its meaning is not dependent on the vagaries of different state laws and different interpretations of state laws, however authoritative they may be for state law purposes. . . . [A] plaintiff . . . remain[s] so even after final disposition of its claims [and realignment].

*Rodriguez*, 268 F. Supp. 2d at 91 (quoting *Reiter*, 477 F. Supp. 125) (emphasis added).    The *Rodriguez* court further explained:

> the court cannot make two lawsuits out of the one [the original plaintiff] initiated against [the original defendant] in state court. The dismissal of [the original plaintiff's] claim against [the original defendant] and the subsequent realignment of the parties pursuant to their stipulation cannot be said to have created a second lawsuit. . . . The outright dismissal of [the original plaintiff's] claim . . . did not change the unitary nature of the action, and the [realignment] of the parties . . . was nothing more than a convenient handle. . . . The fact that the parties here may have recharacterized their positions vis-a-vis one another when [the original plaintiff] was willing to dismiss its claim does not change the basic character of the lawsuit initiated by [the original plaintiff] in state court [against the original defendant] or, for that matter, the  counterclaims asserted by [the original defendant] in his defense.

*Id.* at 90-91.

10

*Rodriguez* and *Reiter* employ a reasoned approach.  Another court, indeed, although considering the readily distinguishable situation in which a party sought realignment as the defendant <u>after</u> removal, recently endorsed *Rodriguez*.  *See Palisades Collections LLC v. Shorts*, Case No. 5:07cv098, 2008 U.S. Dist. LEXIS 6354, at *18 (N.D. W.Va. Jan. 29, 2008) ("[E]ven in actions in which the original claim filed by the plaintiff is settled or dismissed, the original plaintiff remains the plaintiff for purposes of removing the remaining counterclaims." (citing *Rodriguez*, 268 F. Supp. 2d at 90)).[9]  As discussed in Section IIC herein, this Court is not wholly persuaded by these cases, however.  In particular, none of these courts really explain why it is that a party who asserts no affirmative claims (like all parties in this action other than Hrivnak), is defending itself from such claims, and has been realigned as a defendant by a state court order is not a "defendant" under § 1446 (b).

Even if this Court does assume that *Rodriguez* and *Reiter* are correct on their facts, moreover, there is a meaningful distinction between those cases and this one.  In *Rodriguez*, the parties stipulated to realignment before the state court, in *Reiter*, the clerk realigned the docket, while, here, the state trial judge entered an order of realignment.  This fact is material because the state order both removes any concerns regarding collusion between the parties from the equation and constitutes a formal, pre-removal, determination regarding the character of the action and the parties' respective

---

[9] *Palisades* relied, as well, on what may be a misreading of another case, *Green Tree Financial Corp. v. Arndt*, 72 F. Supp. 2d 1278 (D. Kan. 1999).  The *Palisades* court stated:

> In *Green Tree*, the district court stated that it was unaware of any case that had "employed realignment principles to conclude that a state court plaintiff can become a defendant, for purposes of § 1441(a), entitled to remove after the dismissal of its self-appointed claims."

*Palisades*, 2008 U.S. Dist. LEXIS 6354 at *18 (quoting *Green Tree*, 72 F. Supp. 2d at 1282).  This is arguably out of context.  *Green Tree* considered whether a party designated as a plaintiff in state court could realign itself.  *See Green Tree*, 72 F. Supp. 2d at 1281.  It appeared to reserve the question of whether a realignment *by the state court* might confer jurisdiction.  *Id.*  ("Green Tree did not obtain an order from state court or this court changing its status from plaintiff to defendant.").

roles.  While the Court does not believe its reading of § 1446(b) depends upon this distinction, it is a distinction which arguably reconciles the judgment below with those in *Rodriguez* and *Reiter*.

### C.  Analysis

This question is not susceptible to an easy answer, and jurists of reason might well follow *Rodriguez*, even in the face of the pre-removal state court order of realignment at issue here.  This Court declines to do so, however.  Although the word "defendant," as used in § 1446 (b), is inarguably limited to true defendants - not counterclaim defendants, and surely not plaintiffs - jurisdiction is to be measured by a federal court at the time of removal.  *Terry v. Jackson*, 19 Fed. Appx. 377, 378 (6th Cir. 2001) (citing *Rogers v. Wal-Mart Stores, Inc.*, 230 F.3d 868, 871 (6th Cir. 2000)); *see also Conn. State Dental Ass'n v. Anthem Health Plans, Inc.*, 591 F.3d 1337, 1351 (11th Cir. 2009); *Francis v. Madison Nat'l Life Ins. Co.*, Case No. 09-12345, 2009 U.S. Dist. LEXIS 66121, at *5 (E.D. Mich. July 31, 2009).  At the time this action was removed, it was removed by state court defendants, and § 1446 (b) does not contemplate that a court will peer back through the history of the state court litigation: indeed, it appears to demand that the Court not.  *See id*.  It seems, instead, § 1446(b) compels the conclusion that a state court order realigning a particular party as a plaintiff or a particular party as a defendant can create removal jurisdiction where none previously existed, subject to the caveat that a federal court must exercise its own judgment to ensure that opposing parties are on opposite sides of a dispute, *see Chase Natational Bank*, 314 U.S. at 70.

The Court can arrive at this same conclusion, too, in another way.  This Court must exercise its own judgment to determine whether parties are truly opposed to each other, *see Chase National Bank*, 314 U.S. at 70, and it would be a strange limitation on this rule to hold that the Court must nevertheless consider the party who asserted all of the affirmative claims pending in this action at the time of removal to be a defendant, and that it must ignore the state court's formal assessment of the parties' roles in the litigation when doing so.

In sum, although it is true that the complaint that was removed to this Court was at one time, prior to removal, a counterclaim, the *only* dispute in controversy at the time of removal was one consisting of claims asserted by Hrivnak as a plaintiff against the Defendants.  Accordingly, the Defendants were entitled to remove this action within 30 days of the filing of Hrivnak's complaint, itself filed in response to the state court order realigning parties.  That the Defendants were not defendants at some point in the past does not change their status at the time of removal, which is the question the Court must answer.

Hrivnak's Motion to Remand (Doc. 17) is thus **<u>DENIED</u>**.

### III. Motion to Strike

On March 30, 2010, NPM and Javitch presented Hrivnak with what NPM and Javitch captioned an Offer of Judgment.  (Doc. 18-2.)  In response, Hrivnak filed what he terms a Motion to Strike an Offer of Judgment (Doc. 18).  He contends that it is improper to tender an offer of judgment to a plaintiff who purports to bring a class action.  (*See id.*)  Javich, for its part, argues that such an Offer of Judgment is proper.  (*See* Doc. 22 at 2; Doc. 29.)[10]  Hrivnak has also moved, in the alternative, for class certification.  (Doc. 18.)  Javich opposes this motion on the grounds that it does not meet any of the requirements for showing that class certification is appropriate.  (*See* Doc. 22 at 7-8.)

### A.  The Federal Rules do Not Contemplate Hrivnak's Motion

As an initial matter, Hrivnak's Motion to Strike must be denied for the simple reason that his motion does not exist under the Federal Rules.  *See Tucker v. Potter*, No. 06cv2359, 2009 U.S. Dist. LEXIS 61060, at *33 (N.D. Ohio July 6, 2009).  The procedural rule that discusses a court's

---

[10] The Court discerns from the briefing that the relationship between counsel is antagonistic and that the parties have been embroiled in somewhat protracted litigation.  While the Court understands that litigation is sometimes contentious, *ad hominum* attacks on one's opponents or their counsel are not appropriate and shall not be repeated.

authority to strike items from the record is Fed. R. Civ. P.12(f), which permits striking matters only from pleadings.  While some courts have employed Fed. R. Civ. P.12(f) to strike an affidavit or a brief, or portions thereof, there is no basis in the Federal Rules for doing so.  *McLaughlin v. Copeland*, 435 F. Supp. 513 (D. Md. 1977).  In fact, a decision in this district, affirmed by the Sixth Circuit Court of Appeals, refused to employ Fed. R. Civ. P. 12(f) to strike an affidavit because "the rule relates only to pleadings and is inapplicable to other filings." *Dawson v. City of Kent*, 682 F. Supp. 920 (N.D. Ohio 1988), *aff'd*, 865 F.2d 257 (6th Cir. 1988); *see also Zerman v. City of Strongsville*, No. 1:04cv2493, 2006 U.S. Dist. LEXIS 70503, at *21-26 (N.D. Ohio Sept. 28, 2006), *aff'd*, 259 Fed. Appx. 723 (6th Cir. 2008).  In this case, there is not even anything on the docket of the Court to strike, even if the Court were empowered to do so.  *See McDowall v. Cogan*, 216 F.R.D. 46, 52 (E.D.N.Y. 2003) ("[T]here is nothing to strike here, as an offer of judgment is not filed with the court until accepted or until offered by a defeated party to prove costs . . . ." (citation omitted)).

### B.  The Effect of the Defendants' Offer

Setting aside the fact that this Court cannot literally "strike" the Defendants' offer, a substantive question remains, which is the effect of an offer of judgment to a plaintiff in a putative class-action lawsuit prior to class certification.  The rule is straight-forward: "an offer of judgment made to a named plaintiff prior to class certification 'disappears' [if] the class is certified."  *Id.* at 50 (quoting *Kremnitzer v. Cabrera & Rephen, P.C.*, 202 F.R.D. 239, 244 (N.D. Ill. 2001).  This rule is not "restricted to cases where the class has already been certified."  *McDowall*, 216 F.R.D. at 50. Defendants should not:

> be allowed to force plaintiffs into hastily-drafted certification motions by making offers of judgment.  Such a policy would clearly hamper the sound administration of justice, by forcing a plaintiff to make a class certification motion before the record for such motion is complete . . . .

*Id.* at 51; *see also Weiss v. Regal Collections*, 385 F.3d 337, 347 (3d Cir. 2004) ("[I]n certain circumstances, to give effect to the purposes of Rule 23, it is necessary to conceive of the named

14

plaintiff as a part of an indivisible class and not merely a single adverse party even before the class certification question has been decided."). Put simply, "a settlement offer will not moot the named plaintiffs' claims so long as the plaintiffs have not been dilatory in bringing their certification motion." *Stewart v. Cheek & Zeehandelar, LLP*, 252 F.R.D. 384, 386 (S.D. Ohio 2008).

Javitch's arguments that its Offer of Judgment acts to moot the Plaintiff's claim are unpersuasive. First, Javitch argues that Hrivnak was not sufficiently diligent in pursuing class certification. Second, despite citing the above caselaw with approval in briefing, Javitch has filed a Notice of Additional Authority, in which Javitch seems to suggest that the Court disregard cases such as *Weiss* and *Stewart* and find that an offer of judgment moots a putative class action plaintiff's claims even when a plaintiff *has been diligent* in pursuing certification. (Doc. 29) (citing *Lucero v. Bureau of Collection Recovery, Inc.*, Case No. 09-0532, 2010 U.S. Dist. LEXIS 52288, at *15-19 (D.N.M. May 6, 2010)).

With respect to its claim of a lack of diligence on Hrivnak's part, Javitch initially acknowledged that :

> If the Rule 68 offer for relief is made to the named plaintiff in a putative class action before the filing of the certification motion, most courts hold that the offer does not moot the putative class action unless the plaintiff unduly delayed in pursuing certification, reasoning that the district court should have a reasonable opportunity to consider whether a class may be certified.

(Doc. 22 at 4) (citation omitted). Javitch argues, however, that Hrivnak's conduct satisfies this "undue delay" standard:

> [this offer is not] a race to pick off the Plaintiff [because,] [a]lthough this action was only recently removed to this Court, Mr. Hrivnak's claims were first made by counterclaim filed July 9, 2009, discovery was undertaken by Plaintiff in the state court, and the action has been pending for more than eight months.

(Doc. 22 at 3.) This argument is not persuasive. Javitch and NCM tendered their Offer of Judgment <u>two days</u> after the case was removed to federal court. Even assuming that Hrivnak should be able to tender a well-supported motion for class certification in the very near future, an assumption about

which the Court does not rule at this time given its lack of familiarity with the state court proceedings, Hrivnak was not required to have a class certification motion "at the ready," on the chance that he lost his opposition to realignment before the state court.  The Court observes, indeed, that the Offer of Judgment was filed even before the Defendants tendered their answers.  *See McDowall*, 216 F.R.D. at 51 n.5 ("Here . . . defendant interposed an offer of judgment immediately, even prior to answering.  It left plaintiff no opportunity to move for class certification.").

Perhaps realizing belatedly that it could not establish undue delay on the part of Hrivnak, Javitch filed a Notice of Additional Authority after briefing on this motion was closed.  (Doc. 29.) This filing contains a citation to a decision rejecting the above-cited caselaw and finding that, irrespective of diligence, a district court "does not have jurisdiction over a case where no class has been certified but the defendant has satisfied the plaintiff's demand for relief."  (Doc. 29 at 1 (citing *Lucero*, 2010 U.S. Dist. LEXIS 52288, at *15-19)).[11]

The Court has considered *Lucero*, but adopts instead Judge Algenon L. Marbley's thorough reasoning in *Stewart* rejecting such holdings.  The Court finds, in particular that: (1) "if the putative class representatives' claims could be mooted by a settlement offer tendered before the certification motion is filed–each side will endeavor to beat the other to the punch."; (2) "treating pre-certification settlement offers as mooting the named plaintiffs' claims would have the disastrous effect of enabling defendants to essentially opt-out of Rule 23."; (3) "with Rule 23 cast aside, those who have been harmed will be forced to file individual suits to obtain redress. . . . assuming that even a few of the thousands or tens of thousands of class members are driven to hire their own lawyers and take on the defendant, the courts will be forced to contend with multiple, largely identical lawsuits, thereby wasting judicial resources.  Litigant resources too will be unnecessarily expended . . . ."; and (4)

---

[11] The holding in *Lucero* is not a unique one.  Earlier briefing and the Court's own research indicate that a minority of courts, particularly those within the Tenth Circuit, reject the reasoning of *Stewart* and *Weiss*.

"Rule 68 offers of judgment prior to class certification pit the self interests of named plaintiffs against the interests of the class as a whole."  *Stewart*, 252 F.R.D. at 386 (citations omitted); *see also McDowall*, 216 F.R.D. at 51 ([D]efendants should not be allowed to force plaintiffs into hastily-drafted certification motions by making offers of judgment.").

Accordingly, although Hrivnak's Motion to Strike (Doc. 18) is **DENIED**, the Court observes that Javich and NCM's Offer of Judgment is without effect at this time.  The Court need not consider Hrivnak's alternative Motion for Class Certification (Doc. 18), which is **TERMED** pending the establishment of a Case Management Plan for this action.

### C.  Other Issues Raised in Briefing

Javitch makes two additional points in its briefing in opposition to Hrivnak's Motion to Strike worthy of brief commentary.  First, Javitch argues:

> Plaintiff has no special pecuniary interests in pursuing a class claim or 'in being reimbursed by other members of the class for the attorneys' fees that he had incurred,' because the proposed offer made to him included his costs [and] reasonable attorneys fees . . . .

(Doc 5.)  Although this may be correct (and it is in direct response to one of Hrivnak's arguments), it is something of a non-sequitur.  For present purposes, the question is not whether this particular offer of judgment would moot Hrivnak's interest in this action if it were a valid offer, but whether it *is* a valid offer.  As explained above, at this stage of the proceedings, it is not.  *See Stewart*, 252 F.R.D. at 386; *McDowall*, 216 F.R.D. at 51.[12]

Second, Javitch argues:

_____

[12] Javitch also makes the point "judicial approval of any settlement of a class action claim only applies to a "certified class."  (Doc. 22 at 2) (citations omitted).  This is true, of course, *see* Fed. R. Civ. P. 23(e), but the question here is the effect of an offer of judgment "so long as the plaintiffs have not been dilatory in bringing their certification motion" (none, *see Stewart*, 252 F.R.D. at 386,) not whether the Court would need to approve a settlement.  Not all settlements fall under the purview of Rule 68.  *See, e.g.*, *Caraballo Cordero v. Banco Financiero*, 208 F. Supp. 2d 185, 191 (D.P.R. 2002).

> Even if the Court found the offer did not moot this action, should class certification (when actually sought) be denied, if an individual violation were thereafter proven months or years from now, a downward adjustment of any fee award would be warranted based on having made the offer.

(Doc. 22 at 6.)  This argument is speculative and not ripe for adjudication at this time.

## IV. UNOPPOSED MOTION TO AMEND

The Defendants have filed an Unopposed Motion that asks for "leave to amend notice of removal & consent to removal by interlineation to correct typographical error."  (Doc. 20.)  This motion is **GRANTED**.

## V. DEFENDANTS' MOTION FOR JUDGMENT ON THE PLEADINGS

Javich's Motion for Judgment on the Pleadings (Doc. 4) does not comply with this Court's standing order with respect to appropriate citation.[13]  It is, accordingly, **TERMED**, subject to refiling within ten (10) days if appropriate.

## VI. CONCLUSION

For the aforementioned reasons, Hrivnak's Motion to Remand (Doc. 17) is **DENIED**, Hrivnak's Motion to Strike (Doc. 18) is **DENIED**, Hrivnak's Motion for Class Certification is **TERMED** (Doc. 18), Defendants' Unopposed Motion to Amend (Docs. 20) is **GRANTED**, and Javitch's Motion for Judgment on the Pleadings (Doc. 4) is **TERMED**, subject to refiling within ten (10) days if appropriate.

---

[13] A copy of the Court's standing orders are available on-line at http://www.ohnd.uscourts.gov/Judges/judges.html.  The Court understands that it may not have occurred to counsel to review these orders, which are entered on the docket after the Case Management Conference, and the Court has waived strict compliance with these orders for the other motions that are currently pending.  Nevertheless, compliance with the standing order will aid the Court's review of Javitch's Motion for Judgment on the Pleadings, and the Court requests this compliance for Javitch's benefit as much as its own.

**IT IS SO ORDERED.**

s/Kathleen M. O'Malley
**KATHLEEN McDONALD O'MALLEY**
**UNITED STATES DISTRICT JUDGE**

**Dated: July 19, 2010**